## GEORGE JOWELL v. THE STATE.

### No. 2675. Decided December 11, 1902.

**1.—Filing Papers.**

On a change of venue, where it appeared that the clerk had failed to place his file mark upon the papers and the transcript, it was proper for the court to order him to do so after the parties had announced ready for trial.

**2.—Assault to Murder—Opinion Evidence.**

On a trial for assault with intent to murder, it was competent to question a witness as to whether he, and others with him, had, prior to the difficulty, done anything or used any obscene and profane language, in a loud and boisterous manner, calculated to cause a disturbance. The testimony was not objectionable because it sought to elicit a conclusion or opinion from the witness, but was a shorthand rendering of facts, and admissible.

**3.—Same.**

On a trial for assault to murder, it was competent for a physician to testify that the ball which inflicted the wound was not extracted for twenty-five days; that when he saw prosecutor last he was in a serious condition; that he was unable to attend court, and it was doubtful if he ever would recover, and that his right arm was paralyzed.

**4.—Bill of Exceptions to Admitted Testimony.**

A bill of exceptions to admitted testimony which does not specify the particular portion of the testimony excepted to, will not be considered on appeal where part of the testimony objected to was admissible.

**5.—Assault to Murder—Evidence.**

On a trial for assault with intent to murder, it was competent to prove by an eyewitness that the assaulted party made no movement to draw a weapon or attack defendant at the time of the shooting, and that he was in fact unarmed.

**6.—Same—Defendant as a Witness.**

On a trial for assault with intent to murder, it was competent, as going to show the condition of defendant's mind and explain his acts, to compel him to state, when a witness in his own behalf, if before the difficulty, he had not taken four or five drinks.

**7.—Same—Adequate Cause—Charge.**

On a trial for assault with intent to murder, a charge upon adequate cause, where there was no evidence suggesting manslaughter or aggravated assault, was not injurious or prejudicial to defendant, as it tended simply

to reduce the offense from assault to murder to aggravated assault; and where there was no combination of the facts which constituted adequate cause.

Appeal from the District Court of Armstrong on change of venue from Donley County. Tried below before Hon. H. H. Wallace.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with assault with intent to murder John Lindley, on the 12th day of July, 1902.

The essential facts are stated in the opinion.

No briefs on file for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of assault with intent to murder, and his punishment assessed at confinement in the penitentiary for a term of two years.

The assault occurred in Donley County. Venue was changed to the county of Armstrong. When the case was called for trial, State's counsel called the court's attention to the fact that the papers, including the transcript of the proceedings in Donley County, had not been filed by the clerk in Armstrong County. The court directed the clerk to place his file marks upon the papers. This occurred after both parties had announced ready for trial. Exception was reserved. The court's ruling was corect.

Witness Johnson testified that he was bartender in the saloon where the difficulty occurred in which Lindley was shot. He was then asked by State's counsel if John Lindley or any of the boys who went in the saloon with him prior to the difficulty had done anything to cause a disturbance, or had used any profane or obscene language in a loud or boisterous manner. Witness replied they had not. Objections urged were that this testimony was irrelevant, immaterial, and inadmissible, and states a conclusion of the witness. This is not a conclusion of the witness. It is a fact whether they had or had not created a disturbance, or had used profane and obscene language, or had spoken in a loud and boisterous manner, and, if not critically facts, would come within the category of what the authorities term a shorthand rendering of the facts.

Dr. Stocking was permitted to testify that the ball which caused the wound was not extracted for twenty-five days; that Lindley at the time he saw him last was in a very serious condition, and it was doubtful if he would ever recover; that he was not able then to come to court; that the ball was found half an inch under the skin; and that his right arm was paralyzed. It is contended that this was irrelevant and immaterial, and shed no light upon the issues in the case, and is a statement of a fact or condition that may have been brought about by other causes than the shot. The description of the wound, the location of the ball, and

the production of paralysis were unquestionably admissible. The particular portion of the testimony that may be inadmissible is not pointed out, and we are not required to search through a mass of testimony to which objection is reserved, where much of it is admissible, and perhaps some of it inadmissible, to designate the inadmissible portion of it. That is the duty of appellant. In other words, he must point out in bill of exceptions the particular testimony to which he excepts.

The same may be said of the testimony of witness Patman. Some of his testimony was clearly admissible, while some of it may not have been; but even that portion of it was about matters that were entirely harmless, and might have had no bearing upon this case one way or the other, and did not in any way tend to injure or prejudice him. By this witness the State was permitted to prove, among other things, that immediately preceding the shooting Lindley was in his place of business talking with him; that he was in a good humor; and that directly after the shooting he was brought from the place of the shooting up the street by his (witness') place of business, at which point he fainted from loss of blood. The objections are of the most general character, and do not undertake to point out which of the testimony was objectionable.

The witness Lane was also permitted to testify that Lindley made no movement to draw a weapon or make an attack on appellant in any way at the time of the shooting, and was not armed. Lane was an eyewitness to the transaction, and his testimony in this regard was clearly admissible. It is not a conclusion of the witness, as contended.

Appellant, testifying in his own behalf, was required to state, over objection, that during the afternoon before the difficulty he had taken four or five drinks. This testimony was relevant, properly admitted, and tended to show the condition of appellant's mind at the time, and to explain his acts and throw light generally on the transaction.

The following charge was given at the request of State's counsel: "You are instructed that any condition or circumstance capable of creating, and which does create, sudden passion, such as anger, rage, sudden resentment or terror, rendering the mind for the time incapable of cool reflection, whether accompanied by bodily pain or not, may be adequate cause, and whether such adequate cause existed for such sudden passion, if any there was, it is for you to determine; and in determining this question, as well as all other matters before you, you will consider all the facts and circumstances in this case; but you are further instructed that insulting words or gestures, unaccompanied by violence, are not adequate causes." This charge, precisely in the same language, was given by the court with the exception of the limitation "that insulting words or gestures, unaccompanied by violence, are not adequate causes." The principal objection is that it singled out that particular portion of evidence, and was therefore on the weight of the testimony, and because it indicated to the jury the opinion of the court. This limitation is statutory, and usually is not error when given. This would be true if standing alone. But there might arise cases in

which such a limitation would be error. If the insulting words or gestures formed a part and parcel of the entire transaction, when viewed as a whole, which might or would produce adequate cause, and consequently sudden passion, it would be error to so limit its effect.

Appellant was the city marshal of Clarendon, and was in the saloon playing a game of billiards with witness Lane, where Lindley and some of his associates had gone to get a drink. The negro porter of the saloon passed through the room where they were, and one of the witnesses, in a jocular way undertook to catch him, with the view of "having some fun." The negro went out of the door, and the pursuing party stopped, and appellant approached him and tapped or struck him on the shoulder two or three times with a billiard cue, to attract his attention, as he says. The party looked around and was very indignant at being struck with the billiard cue, and resented it sharply with words. The city marshal was expostulated with by friends of the party in regard to this conduct. Appellant became rather hostile in his replies, and one word brought on another, until Lindley stated that appellant could do more by talking kindly to him than by beating him with a billiard cue. Appellant replied that he had not beaten anybody with a billiard cue. Lindley then told appellant that he did not have any right to hit him with the cue, and appellant said he had a right to hit him or anybody else he desired. Lindley replied that he did not want him to hit him that way, and appellant told him to "get out on a limb." Lindley said he "was on a limb." Jowell then struck him with his hand, "pulled his gun," and struck him with that. Lindley knocked the licks off. Then Jowell "cocked his gun," punched Lindley with it two or three times in the stomach, struck at him again, and then shot him. Appellant, after shooting, turned to the crowd and said: "If any other son of a bitch wants to take it up, let him step out." This expression, however, is denied by appellant. Appellant further stated that in the early part of the conversation he did not have any intention of bringing on a difficulty, and his striking the first time with the cue was simply as a caution that they must not create a disturbance, and informed them they could have all the fun they wanted without creating a disturbance. No witness testified to any demonstration on the part of Lindley either to strike Jowell or to pull a pistol; in fact, when he replied to Jowell's request to "get out on a limb," he "was on a limb," he doubled his arms across his breast, and Jowell struck him with his hand, and one of the witnesses says with a billiard cue. Jowell, however, states in this connection that just before striking Lindley that Lindley doubled up his fist and stepped toward him was his reason for striking in the first instance. He testifies that Lindley did not strike him. We do not believe this testimony suggested the issue of manslaughter. There was no fact creating adequate cause, and, as we understand the statement of facts, there was no combination of facts which constituted adequate cause. All the witnesses, except appellant himself, testified that from the time appellant struck Lindley first until he fired the shot Lindley

was retreating, seeking to avoid a difficulty. If there was no evidence suggesting the issue of manslaughter, the giving of this phase of the law to the jury was simply to reduce the offense from assault to murder to aggravated assault. This limitation in the charge requested by the State's counsel, therefore, was not injurious. The State's case makes one of unquestioned assault to murder, and the evidence of appellant does not reduce it to aggravated assault. The lowest punishment for assault to murder was imposed by the verdict.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*