## S. H. Winn v. The State.

### No. 4129. Decided November 18, 1908.

**1.—Murder—Evidence—Impeaching Witness—Moral Turpitude—Too Remote.**

Where upon trial for murder which took place in May 1908, the State over objection of the defendant was permitted to ask defendant if he did not kill a Mexican in 1887 or '88 and was tried therefor, and if he did not plead guilty to theft of hogs in July, 1894. Held that this testimony was inadmissible and too

remote to show moral turpitude. Following Bowers v. State, 71 S. W. Rep., 284, and other cases.

### 2.—Same—Evidence—Undisclosed Motives of Deceased.

Upon trial for murder where the evidence showed that the defendant believed from his own standpoint that the deceased and another had burned his barn; that he had accused them of this crime, and that they had threatened to do him personal violence, it was not permissible for the State to prove for deceased and his companion a complete alibi to the effect that they did not burn defendant's barn, unless this was known to the defendant at the time he made the accusation; as this put the defendant in the attitude of making an unjust accusation against the deceased which culminated in defendant killing him.

### 3.—Same—Charge of Court—Appearance of Danger—Defendant's Standpoint.

Where upon trial for murder the evidence showed that the defendant believed that the deceased had threatened to do him personal violence, because the defendant had accused him of burning his barn, it was error in the court's charge on manslaughter and self-defense to limit defendant's right to acquittal or manslaughter to actual danger to his life, instead of charging the jury that the circumstances must be viewed from defendant's standpoint whether subsequent events showed he was in danger or not.

Appeal from the District Court of Limestone. Tried below before the Hon. L. B. Cobb.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*James Kimbell* and *Harper, Jackson & Harper,* for appellant.—On question of moral turpitude: Herring v. Patten, 44 S. W. Rep., 50, and cases cited in opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of manslaughter and his punishment assessed at three years confinement in the penitentiary.

Bill of exceptions No. 1 shows that after the State had closed its evidence counsel for appellant asked the court to retire the jury, and requested the court to instruct the State's counsel not to ask the defendant, when he was put on the stand as a witness in his own behalf about having been indicted for killing a Mexican in Leon County, Texas, in or about 1887 or 1888, nor to ask the appellant about having plead guilty to theft of hogs in Robertson County, in the District Court in 1894, unless the State expected to further attack the appellant's character, either for his general reputation for truth and veracity, or by showing other offenses committed by defendant after said time, because said transactions were committed too long ago to affect defendant's standing now. The court refused to so instruct the State's counsel and notified counsel for appellant the same was a proper question for the State to ask the appellant; thereupon, the jury was recalled and the appellant was placed upon the stand, as a witness in his own behalf, and

upon cross-examination, counsel for the State asked the appellant
if he did not kill a Mexican in Leon County in or about 1887 or
1888, and was indicted and tried therefor, and he further asked
him if he did not in July, 1894, plead guilty to theft of hogs in
Robertson County.   Appellant then and there objected, the court
permitted the same to be asked appellant, to which ruling of the
court appellant excepted because said testimony was immaterial to
any issue in the case, and would not tend to prove any fact, and
it was not permissible to prove these two isolated transactions,
happening so long ago, because they were too remote to show moral
turpitude.   The trial took place in May, 1908, and under a long
line of authorities of this court this testimony has been held in-
admissible.   Testimony of this character after a long lapse of
years should not have been introduced where there was nothing in
the record to show that defendant has not reformed.   In other words,
the law will not permit the early indiscretions of a witness to be
brought into requisition to besmirch and becloud his subsequent
life.   To do so, as expressed by Judge Greenlief in one of the cases
cited below would be to preclude any possible chance of a reform
and would enable State's counsel to parade the early misdeeds of
a subsequently useful life to be introduced to becloud and discredit
the subsequently honorable and useful life.   The following authorities
hold said testimony too remote, as insisted on by appellant:   Bowers
v. State, 71 S. W. Rep., 284; Dyer v. State, 44 Texas Crim. Rep.,
78; 77 S. W., 456; Busby v. State, 48 Texas Crim. Rep., 183; 86
S. W. Rep., 1032; and Wesley v. State, 85 S. W. Rep., 802.   See
also Woodward v. State, 58 S. W. Rep., 135.   It follows, therefore,
that the court erred in admitting said testimony.

Bill of exceptions No. 2 shows that the State was permitted over
appellant's objection to introduce a certified copy of a judgment
convicting appellant of the theft of hogs which judgment was ren-
dered July 2, 1894, to the introduction of which judgment appellant
excepted for the reason that the same was too remote to discredit
appellant.   This testimony comes clearly within the rule laid down
above.

Bill of exceptions No. 3 shows that the State over the objection
of appellant was permitted to prove by the witness Ed Moon that
deceased and D. Whaley were in Mart, Texas, from 4 o'clock on
Saturday evening until 12 o'clock that night, the day before the
killing occurred on Sunday night, because said testimony was irrele-
vant and immaterial to any issue in this case, in this to wit: It was
introduced for the purpose of sustaining the testimony of D. Whaley,
who said that he and the deceased were in Mart, Texas, on the
night previous to the killing, until 12 o'clock, and the appellant
had testified that his barn was burned on Saturday about 10 or
11 o'clock, and that he had tracked a buggy from near the barn

to deceased's house, and that he knew deceased and Whaley had been in Mart, Texas, the evening before, and that he had accused them to the officers of burning the barn, and the court overruled appellant's objections and permitted the said testimony to go to the jury. The testimony in this case shows that appellant had some circumstances, such as tracks of a buggy leading from the place where his barn was burned on Saturday night, to deceased's home. The proof further shows that the deceased and D. Whaley, the witness above mentioned, were boon companions and friends and that appellant accused the deceased and Whaley of burning his barn, had the officers come out and look into the matter and said officers informed the deceased and D. Whaley that appellant had accused them of burning the barn. Thereupon, according to the testimony of the defense, deceased and Whaley became very much incensed, passed up and down the road inquiring and looking for the appellant and making threats that they were going to do him personal violence. On the evening of the homicide appellant's son, fearing that deceased and the said Whaley would do his father violence, refused to go and spend the night with a neighbor unless the father would go to his son-in-law's, who was a brother of the deceased, and stay all night. Thereupon, the father having secured a gun, got in the buggy with his son and Amos Ainsworth and started to his son-in-law's. On the way they met deceased and D. Whaley. The State's evidence shows that the deceased and Whaley stepped out of the road just as the buggy passed, appellant hallooed to deceased to hold on, jumped out of the buggy and said, "Consider yourself under arrest," deceased threw up both hands and appellant fired and killed deceased. The testimony for the defense shows that when they met, deceased had a pistol, pointed it at appellant and appellant jumped out of the buggy and fired killing deceased. In the case of Brumley v. State, 21 Texas Crim. App., 222, and Johnson v. State, 22 Texas Crim. App., 206, we held that the defendant could not be bound by the undiscovered and undisclosed motives of the deceased when the same were opposed and contradicted by all the facts and circumstances known to and judged by the defendant from his own standpoint. Now, the evidence in this case shows that appellant from the evidence, believed deceased in conjunction with Whaley had burned his barn. Now, the question arises, was it permissible for the State to prove for Whaley and the deceased a complete alibi. In other words, prove that they did not burn appellant's barn? We answer, no, unless the circumstances proposed to be introduced were known and can be shown to have been known to appellant at the time the accusation was made. Appellant is only bound by his own animus and intent and is to be judged by the circumstances that environ him at the time he acts. Suppose a witness had been forthcoming who had sworn in this case that he burned

appellant's barn. Would this be admissible? Clearly not unless it was shown that appellant knew that said witness burned his barn and not deceased. In other words, the testimony was inadmissible because it puts the appellant in the attitude of making an unjust and an unwarranted accusation against the deceased which culminated in appellant killing deceased. This principle has been followed by this court by an unbroken line of authorities. We hold that said testimony was inadmissible.

Bill of exceptions No. 4 complains of the following charge of the court: "If the defendant killed the deceased through sudden terror or fear under an unreasonable belief that his life was in danger his offense, if any, was no more than manslaughter. If he acted under a reasonable belief that his life was in danger, he should be acquitted." Appellant's objection to this charge is that it limits the jury's right to turn appellant loose, only on the ground that his life was in danger, when the jury might have believed that deceased only intended to inflict on defendant some serious bodily injury, or they might have believed that in the condition of the pistol that he could not have inflicted any injury and that his life was not in danger; that this charge takes away the appearance of danger, and limits the jury to the killing as they see it and not as viewed by the defendant at the time of the killing. The court in addition should have told the jury that the circumstances must be viewed from defendant's standpoint and it was immaterial whether subsequent events showed he was in danger or not. If the danger appeared real to the defendant and under the belief that it was real, he shot and killed deceased, believing his life was in danger, or his person of serious bodily injury, he would be entitled to an acquittal, but if he met the deceased, and his previous belief that deceased had burned his barn and had threatened his life, caused sudden terror, anger, rage or resentment, such as rendered his mind incapable of cool reflection, coupled with the conduct and acts of deceased at the time, then appellant would be guilty of manslaughter.

For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*