## WILLIAM BROWN v. THE STATE.

### No. 4192.    Decided June 2, 1909.

**1.—Murder—Evidence—Provocation—Motive.**

Upon trial for murder there was no error in admitting in evidence a declaration by the defendant shortly before the homicide that the deceased would be the cause of his having to kill somebody, it being part of the same quarrel which led up to the homicide.

**2.—Same—Evidence—Declarations of Defendant.**

Upon trial for murder an unconnected incident in the form of a conversation between defendant and a third party should have been excluded.

**3.—Same—Evidence—Declaration of Defendant.**

Upon trial for murder, testimony to the effect that the defendant a day before the homicide cursed and threatened a third party should have been excluded.

**4.—Same—Evidence—Threats.**

Upon trial for murder the court erred in admitting in evidence the declarations of the defendant, made a day before the homicide to a third party, not to be surprised if he heard of a Joe Decker scrape before defendant and others returned from the city to which they were going; there being no connection shown between this remark and the killing of deceased.

**5.—Same—Evidence—Threats—Reconciliation.**

Upon trial for murder there was no error in admitting in evidence threats made by defendant against his wife and that he shot at her on one occasion, although these threats and acts occurred at intervals after reconciliation between the parties; said reconciliations not being complete at the time when they were made.

**6.—Same—Res Gestae Statement—Evidence.**

Upon trial for murder defendant's statement made within six or seven minutes after the shooting, and at the place of the shooting, in connection with some powder-burns on his face, and explaining why he did not cry out earlier, should have been admitted in evidence.

**7.—Same—Moral Turpitude—Evidence—Too Remote.**

Upon trial for murder testimony that defendant had, some eleven or twelve years prior to the trial, been convicted of cattle theft, etc., was inadmissible.

**8.—Same—Manslaughter—Accidental Homicide.**

See opinion for facts which did not raise the issues of accidental homicide and manslaughter.

Appeal from the District Court of Harrison.    Tried below before the Hon. W. C. Buford.

Appeal from a conviction of murder in the first degree; penalty, life imprisonment.

The opinion states the case.

*Y. D. Harrison* and *R. A. Sexton,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for murder in the first degree, with life imprisonment in the penitentiary.

The State relies upon facts showing, with more or less cogency, that appellant shot and killed his wife. They lived in Panola County, and had gone to the city of Marshall, in Harrison County, accompanied by a girl named Viola Thomas. Appellant took a bale of cotton which he marketed in Marshall, with the proceeds of which he and his wife made quite a lot of purchases. They gave Viola Thomas some money also with which she made purchases. On their return trip, while yet in the city of Marshall the killing occurred. Viola Thomas' testimony, with other facts and circumstances, was relied upon by the State to show that appellant did the killing. This he denied. The deceased was shot in the left eye, the bullet ranging backward, striking the skull in the back of the head. There are some peculiar circumstances that tend to throw confusion about the immediate facts of the death of the deceased. There was but one shot fired. This, it is claimed, was from a pistol which appellant had gotten from his satchel. Viola Thomas states that just as he got the pistol from the satchel she heard it click, jumped out of the wagon and ran back towards town. The facts show that appellant's face was powder-burned, and that the pistol was found something like thirty-five steps in the direction of town from where the tragedy was enacted. It was in this direction that Viola Thomas went when she left the wagon. It is clearly shown that appellant did not go in that direction; that he remained at the wagon. The evidence also discloses that there had been differences between appellant and his wife. On one occasion he shot at her a couple of times, and on two or three occasions threatened her life, and had minor troubles, such as appellant says come up in the ordinary course of life between husband and wife. Between these occurrences or difficulties they seemed to be reconciled and lived comfortably, if not happily, together. Appellant, among other things, immediately after the shooting stated that Viola Thomas shot his wife, and he testified to facts indicating that somebody else shot at him and in this manner shot his wife, and thus sought to account for the powder-burns on his face. He was quarreling with his wife at the time of the difficulty, according to the testimony of Viola Thomas, because he had seen her talking with a man upon the street, and stated that her conduct would cause him to have to kill some damn son-of-a-bitch. The facts are rather voluminous, and this may be a sufficient statement to bring in review the questions suggested for reversal.

1. Bill of exceptions No. 1 was reserved to the failure of the court to quash the copy of the indictment served upon appellant. Bill of exceptions No. 2 was reserved to the refusal of the court to continue the case on the application of appellant. There are some bills of exception reserved to the remarks of the district attorney. We deem it unnecessary to review these matters as they will not arise upon another trial.

2. Bill of exceptions No. 3 recites that the State was permitted to prove by Viola Thomas that defendant quarreled with his wife in the town of Marshall and said to her: "You are going to have me kill some of these God-damn sons-of-bitches about you." To this appellant urged several objections. As qualified by the court this testimony was admissible. The quarrel began as they were leaving the town and continued until the killing occurred, which was within three quarters of a mile of the point from which they started.

3. The fourth bill of exception recites that while appellant, his wife and the witness Viola Thomas were in the wagon on the square in the city of Marshall, a white man passed and appellant said to him, "Breach this gun up," and the white man did not stop, and appellant said to his wife, "The God-damn son-of-a-bitch is scared to stop." Objection was urged to this. Upon another trial we suggest that this testimony be excluded. It is not shown to have had any connection with his wife in any way. The bill is very indefinite, but as the matter is presented we are of opinion it should not have been permitted to go to the jury.

4. Bill of exceptions No. 5 recites that the witness Joe Marcellus was permitted to testify as follows: "I was waiting at the gate at Abe Lister's and William Brown came up to me and says, 'You God-damn son-of-a-bitch, I've a good mind to shoot your left eye.' This was on Sunday before the deceased was killed on Monday, and just before William Brown, his wife and Viola Thomas left Panola County, Texas, for Marshall, Texas. Eveline Brown and Viola Thomas were not present when this remark was made to me." This evidence was clearly inadmissible and should have been excluded. The threat was in no way connected with the deceased.

5. Bill of exceptions No. 6 was reserved to the ruling of the court in which the State was permitted to prove by the same witness Marcellus that, "that day as he started out of the gate to come to Marshall, he spoke to me and his boy, my sister's child. I can not tell exactly whether he was mad or not, acting like he had been acting. As he started he said, 'Don't be surprised if you hear of a Joe Decker scrape before we get back.' He did not tell me what a Joe Decker scrape was, but he was often talking about it. Joe Decker was a fellow that used to live down there and went to Oklahoma and killed several fellows out there. Decker stayed out at Oklahoma. He stayed at Tatum and he stayed at Beckville a while. I think William Brown (appellant) run with Decker a little." In

this same connection appellant was required to testify over his objection that he knew Decker and knew all of old man Decker's boys, and knew the one who got into trouble in Oklahoma. He says he was not personally acquainted with that Decker, but heard of some trouble that he got into and heard that he had killed some men in Oklahoma. This testimony was inadmissible. It is not shown to be connected in any manner with the killing of his wife. There was nothing in the conversation, so far as these bills are concerned, that indicated that at the time he had any reference to his wife or that the threats and the statements he made to the witness in regard to Decker indicated any feeling towards her.

6. There are two or three bills of exception reserved to threats made by appellant towards his wife along at intervals, and there is also testimony to the effect that he shot at his wife on one occasion two or three times. There would be in the meantime reconciliations, and these threats would come at intervals. It is a very close question whether this testimony was admissible. Where threats are made and is followed by a complete reconciliation and the matter is thus ended, the previous threats would be inadmissible. Such we understand to be the rule as laid down by the authorities. See Vol. 1, McLain's Criminal Law, sec, 419. While in this particular instance there would be reconciliations between these outbursts of passion, threats and acts on the part of defendant, yet when he would again become angered with his wife the threats would be repeated. We are of opinion that under the peculiar circumstances of this case the admission of this testimony was not error.

7. By the witness Williams appellant proposed to prove his res gestae statement within six or seven minutes after the shooting and at the place of the shooting in connection with some powder-burns on his face, and explaining why he did not hollo earlier. We think this testimony was admissible, especially in connection with other testimony in the record, which shows that appellant's face was powder-burned. Upon another trial this testimony should be permitted to go to the jury, if presented in the same manner as in this record.

8. There are three bills of exception reserved to the admission of testimony that appellant had in the year 1893 been convicted three times for cattle theft, as well as showing the cumulative sentences in these cases. This testimony was inadmissible. We have passed on this question quite often and deem it unnecessary to cite the cases.

Without going into a detailed statement of the facts, we are of opinion that the questions of accidental homicide and manslaughter are not suggested by the record.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*