JOE SPILLER v. THE STATE.

No. 979.   Decided March 15, 1911.

**Theft of Hog—Moral Turpitude—Remoteness.**

Upon trial for theft of a hog, it was reversible error to force one of defendant's witnesses to testify that some fifteen or twenty years ago he was sent to the penitentiary; this time was too remote. Following White v. State, 57 Texas Crim. Rep., 196, and other cases.

**2.—Same—Charge of Court—Defensive Matter.**

See opinion for failure of court to present defendant's defensive matters, and the court's comments thereon.

**3.—Same—Insufficiency of the Evidence.**

See opinion for facts held not to show that there was any fraudulent connection of the defendant with the alleged theft of the hog.

**4.—Same—Owner—Insufficiency of the Evidence.**

Where, upon trial of the theft of a hog, the evidence was insufficient as to the alleged ownership of the hog, there was reversible error.

Appeal from the District Court of Liberty. Tried below before the Hon. L. B. Hightower.

Appeal from a conviction of the theft of a hog; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Stevens & Pickett,* for appellant.—Upon question of moral turpitude cases cited in the opinion.

Upon question of failure to show wrongful taking: Porter v. State, 23 Texas Crim. App., 295; Atterberry v. State, 19 Texas Crim. App.,

401; Morrison v. State, 17 Texas Crim. App., 34; Dow v. State, 12 Texas Crim. App., 343; Hornbeck v. State, 10 Texas Crim. App., 408.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of hog theft, his punishment being assessed at two years confinement in the penitentiary.

1. One of appellant's witnesses, on cross-examination, over appellant's objection, was forced to testify that something like fifteen or twenty years ago he was sent to the penitentiary for two years. This matter is made clear by proper bill of exception. This was error. The time is too remote. This question has been frequently before this court. White v. State, 57 Texas Crim. Rep., 196; Brown v. State, 56 Texas Crim. Rep., 389; Hanks v. State, 55 Texas Crim. Rep., 451; Gardner v. State, 55 Texas Crim. Rep., 400; Brown v. State, 120 S. W. Rep., 444; Bogus v. State, 55 Texas Crim. Rep., 126, 114 S. W. Rep., 823; Winn v. State, 54 Texas Crim. Rep., 538, 113 S. W. Rep., 918; Casey v. State, 50 Texas Crim. Rep., 392, 97 S. W. Rep., 496.

2. There are several interesting questions presented with reference to the failure of the court to present appellant's defensive matters which are sustained by evidence tending to show his innocent connection with the taking of the hog, especially with reference to the matter of mistake. However, in view of the disposition we shall make of the case, we think it is unnecessary to discuss those questions.

3. There is a serious question in the case upon which error is confessed by the Assistant Attorney-General; at least, the Assistant Attorney-General is of the impression that the evidence is not sufficient to sustain the conviction. Quite a lot of testimony was introduced as to the description of the hog, the ownership, and the identity of the animal. We are of opinion that the defendant ought not to be sent to the penitentiary on this state of facts. He is shown to have sustained a good character all his life and is now getting to be an old negro. The evidence is not controverted that the hog was taken openly under a claim of right and ownership. The witness Irions testified, as did the appellant, that the hog he killed was one that he obtained from Irions; that Irions had some hogs running in the neighborhood of what is termed Palmer Lake, and that he authorized defendant to mark the hogs, for which he gave him one half. They were wild hogs, and Irions said he did not have the time to give them attention. The hog that was killed by appellant ran with some of Irions' hogs, and was driven up by Irions and appellant and killed at Irions' residence in the evening, Irions killing one at the same time for himself. The hog that was killed was kept over night at Irions, and appellant borrowed a wagon from Mr. E. L. Smith for the purpose of carrying the hog from Irions' house to his house. These matters all occurred in the open daylight, Mrs. Irions substantiating the evidence

of both her husband and appellant as to the manner of killing and the place of killing. Both of those witnesses are, to some extent, sustained by other testimony to the effect that this particular hog was one that was marked by appellant from those that Mr. Irions had authorized him to mark. The next morning while the hog was being hauled from Irions' residence to that of appellant, Mr. E. L. Smith saw the hog in the wagon. When the parties who claimed to have lost the hog went to appellant's house appellant showed them the hog that he had killed, and was open in regard to the matter. There was some conflict in the evidence of the two white men who were at the old negro preacher's house, and the preacher himself, who is the appellant, as to some of the details that occurred. The State's witnesses Kirkham and Blair identified the hog as theirs by the mark upon one ear. The other ear had been thrown about the place somewhere on account of its being sore and unfit for use. The other ear was retained upon the hog, and was exhibited to Blair and Kirkham. There arose quite a controversy among the witnesses on the trial as to whether the hog about which Blair and Kirkham testified was living at the time. As we understand this record, some of the witnesses, and especially Mr. Smith, testified that he had killed the hog some time before this because of his viciousness in killing dogs and fighting. The State's case, put in its strongest light, is as above stated, with perhaps the further statement that Blair and Kirkham testified that their hog had not been seen on the range since they saw the dead animal at appellant's house. We are of opinion that on a trial of the rights of property it was more than a serious question that appellant not only did not kill the hog of the alleged owner, but the hog in question was his animal, and the manner of taking it, and all the testimony, as a whole, in our judgment, does not show that there was any fraudulent connection with the animal in any event that would justify sending this old negro to the penitentiary.

4. There is another matter in the record that might be mentioned should another trial occur: This record, in our judgment, does not show Blair to be the owner of the animal; that he was not in fact the owner is disproved by all the testimony. In order to hold that Blair was the owner, legally speaking, it was incumbent upon the State to show that he had the exclusive control, care and management of the hog alleged to have been stolen. This, we think, was not shown. He and Schrader had some hogs in partnership, but this hog was not one of them. We are of opinion the evidence is not sufficient to show that Blair was the owner of the hog, under any view of the law, to justify the allegation in the indictment. It may be that he was, but we do not believe the record shows it.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*