EL PUEBLO, DEMANDANTE Y APELADO, *v.* CARRILLO, ACUSADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Humacao, en causa por delito de hurto de menor cuantía.

No. 1093.—Resuelto en diciembre 12, 1916.

HURTO DE MENOR CUANTÍA—CORPUS DELICTI—PRUEBA CIRCUNSTANCIAL.—En el hurto, como en otros casos, el *corpus delicti* puede ser demostrado mediante prueba circunstancial; pero debe quedar establecido.

ID.—PROPIEDAD Y POSESIÓN—CUSTODIA Y DOMINIO.—El mero hecho de que el acusado había vendido unos sacos de abono que estaban almacenados en un ranchón de una colonia perteneciente a una compañía que usa abono, sin prueba alguna de que hubiera pérdida de abono para la compañía, o respecto a la propiedad, posesión o verdadera custodia y dominio del abono que de tal modo fué vendido, o del ranchón de donde fué sacado, no basta para sostener una condena por hurto.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Arturo Aponte, Jr., y Ramón P. Rodríguez Alberty.*

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

El acusado y apelante fué declarado culpable del delito de hurto de menor cuantía, primero en la Corte Municipal de Fajardo y luego en la Corte de Distrito de Humacao, a virtud de una denuncia en la cual se imputan los hechos como sigue:

"Que en agosto 1º. de 1915, y en el barrio Daguao de Naguabo, del Distrito Judicial Municipal de Fajardo, P. R., Distrito Judicial de Humacao, P. R., el acusado de referencia, voluntaria, maliciosa y criminalmente, sustrajo de un ranchón de la colonia 'Oriente' que es propiedad de la *Fajardo Sugar Growers' Association,* diez sacos de abono químico y de sangre animal, valorados en setenta dollars, de la que vendió a Lauro Meléndez, cinco sacos en veinte y cinco dollars; a Ignacio Gil (*a*) Nussi, cuatro sacos en veinte dollars; y a Ramón Meléndez un saco en cinco pesos."

Durante la vista en la corte de distrito el denunciante, mayordomo de la Fajardo Sugar Growers' Association de

la colonia "Oriente," declaró que conoce al acusado quien
trabajaba en esa hacienda como listero en el mes de agosto;
que la central utiliza abonos para fines agriculturales del que
está encargado el testigo; que el acusado nada tenía que
ver con guardar el abono; que no tenía nada más que anotar
los peones donde estaban trabajando y el que se regaba
diariamente en cada pieza de caña después que el testigo
repartía el abono, para hacer un informe semanal y man-
darlo a la oficina; que el acusado no tenía que responder
en modo alguno del abono que estuviera dentro de los alma-
cenes, pues el testigo era el responsable; que la responsa-
bilidad del acusado alcanzaba, al recibir él los abonos que
se regaban en el campo si se había regado la cantidad que
le decían los capataces; que ni el testigo ni tampoco algún
jefe de la casa autorizó al acusado para vender una cantidad
de sacos de abono; que el acusado no tenía que ver absolu-
tamente con el abono pues éste estaba bajo la custodia del
testigo quien lo recibía y entregaba en las diferentes piezas de
caña; que allí no había faltado ningún abono y al contar dicho
abono hubo un sobrante de 25 sacos y medio; que el testigo
es la persona mejor informada del número de sacos recibidos
y puestos en depósito; que de acuerdo con la información
que el testigo ha mandado a la compañía no ha faltado abono,
antes al contrario, han sobrado veinte y cinco sacos y medio;
que antes del primero de agosto no puede decir el testigo
cuántos sacos había porque el *report* estaba en la oficina;
"que el testigo se dió cuenta de que esos sacos sobraban el
día 15 de julio, no estando bien hecha la contabilidad ni el
*report* que hizo Carrillo estaba bien hecho."

El superintendente de cultivos de la compañía declaró que
la compañía utiliza abonos; que el acusado había estado colo-
cado en "Oriente" como listero y dejó el empleo volunta-
riamente en la primera o segunda semana de agosto por el
cargo que le hicieron de haber vendido abono a distintas per-
sonas; que el testigo no tuvo nunca conversación con el acu-
sado; que solamente contaron el abono un año nada más;

que el acusado se fué sin haber presentado ninguna excusa; que no fué despedido, sino que se marchó voluntariamente.

Existe otra declaración tendente a demostrar y que para los fines de esta opinión puede admitirse que demuestra fuera de duda razonable, que el acusado envió peones con un carro a un ranchón de la colonia "Oriente," sacó un número de sacos de abono de allí, los entregó a distintas personas y recibió dinero por ellos. Sin embargo, debemos de paso tomar en consideración que las declaraciones hechas en el examen de repreguntas por los dos peones que sacaron el abono del ranchón, únicos testigos de la extracción ilegal del referido abono sugieren un fuerte motivo de cierta animosidad por parte de cada uno de los testigos hacia el acusado; pero esa es, por supuesto, una circunstancia que de existir por sí sola merecería poca o ninguna consideración en apelación.

La puerta del ranchón no estaba cerrada, y dejando a un lado las deducciones que pueden hacerse de los hechos referidos anteriormente, ni una sola palabra se ha dicho para demostrar que el ranchón lo usaba la compañía como almacén para el abono, que el abono que allí había y que fué vendido por el acusado pertenecía a la compañía, o que estaba en su poder o bajo la custodia de su mayordomo, o no era propiedad del acusado.

Como ha sido sugerido por la Corte Suprema de Mississippi en el caso de *Hughes* v. *State,* 20 So. 838, "es cosa que todo el mundo sabe que en casi todas las haciendas otras personas además del mismo dueño de la hacienda, o de los terrenos, son a la vez dueños y están en posesión de sus propios bienes muebles."

Por supuesto que el *corpus delicti* en el hurto como en otros casos puede ser demostrado mediante prueba circunstancial, pero debe quedar establecido. Los casos que sirven de ejemplo en cuanto a este principio constan agrupados en las notas a los casos de *Mason* v. *State,* 16 Am. & Eng. Annotated Cases, 1212; *Bines* v. *State,* 68 L. R. A. 33; y *Sanders* v. *The State,* 28 L. R. A. (nueva serie) 536.

Aunque algunas de las decisiones que han sido publicadas para sostener la condena de criminales cuya culpabilidad era razonablemente clara en casos en que la presentación de prueba directa o prueba circunstancial más robusta parecía difícil o imposible han traspasado en la interpretación de este principio su debido límite, no hemos encontrado ninguna opinión bien razonada que vaya tan lejos como se solicita que hagamos en este caso.   La tendencia general en este sentido puede observarse en los siguientes casos: *George* v. *United States,* 97 Pac. 1052, 100 id. 46; *Shires* v. *State,* 99 Pac. 1100; *Hines* v. *United States,* 103 Pac. 879; *State* v. *Keeland,* 104 Pac. 513; *State* v. *Van,* 120 Pac. 479; *Peterson* v. *State,* 65 S. E. 311; *Ray* v. *State,* 60 S. E. 816; *State* v. *Reeze,* 140 Pac. 126; *Cohoe* v. *State,* 118 N. W. 1088.

Con excepción de dos casos que tal vez se inclinan al extremo opuesto más de lo que exigen los dictados de la razón y de la justicia, puede verse una consideración más sana de los derechos fundamentales del acusado en los siguientes casos: *Perry* v. *State,* 46 So. 470; *State* v. *Loomis,* 105 N. W. 397; *Spiller* v. *State,* 135 S. W. 549; *State* v. *James,* 113, S. W. 232; *State* v. *Roswell,* 133 S. W. 99.

En estos casos como en otros la verdadera regla tiene que descansar en un sano sentido común como término medio entre los dos extremos, y los hechos en cada caso, según surja, deben ser apreciados de acuerdo con la única regla general ya referida, o sea, que cualquiera que fuere el carácter de la prueba, deberá ésta establecer cada elemento esencial del delito.

En el presente caso ni existe prueba de la propiedad del abono vendido por el acusado ni prueba de haber algún déficit en el abono perteneciente a la corporación.   El mayordomo encargado del abono usado por la compañía, insiste en su declaración en que había un sobrante de unos 25 sacos de acuerdo con su propio inventario e informe; que notó este sobrante en julio 15, pero no puede precisar el número de sacos que había antes de agosto 1°. ''porque el informe está

en la oficina.'' No se trató de presentar el informe. Si fuera cierto como ha manifestado este testigo que ni su misma contabilidad ni el *report* hecho por el acusado eran correctos, y si fuese asimismo cierto lo que ha declarado el propio testigo, esto es, que el acusado recibía el abono que había de usarse en los campos, entonces, y en tanto estas circunstancias indican una falsificación por el acusado en los informes semanales que hacía en cuanto al número de sacos por él recibido y usados, surge un caso de abuso de confianza más bien que de hurto. Pero el mismo testigo también dice que el acusado no tenía que ver en absoluto con la custodia y manejo del abono usado por la compañía, el cual era entregado por el testigo sobre el terreno para ser usado en cada pieza de caña, y que la responsabilidad del acusado se limitaba a contar y anotar el número de sacos realmente colocados en cada pieza por los mayordomos a cargo del trabajo.

El hecho relativo a la propiedad o posesión real del abono que había en el ranchón (mencionado una vez solamente durante el juicio por un solo testigo de la acusación, uno de los dos peones que declararon sobre el cargamento del carro siguiendo instrucciones del acusado) debió haber sido demostrado fácilmente. Verdaderamente parece que la verdad en cuanto al particular estaba a punto de decirla el denunciante que se encontraba deseoso por darla a conocer y sólo esperaba la indicación del Fiscal de que dicha información se necesitaba. Pero resolver que una corte sentenciadora en una causa criminal puede sellar al acusado con el estigma de una condena de hurto, meramente porque ha vendido unos sacos de abono que está almacenado en un ranchón de una hacienda dirigida por una corporación que usa abono en el cultivo de la caña, habiéndose sacado el abono así vendido, no a escondidas, sino mediante la orden dada a un carretero empleado en la misma finca donde está el acusado, y que, según parece, tenía motivos que eran conocidos del acusado para mostrarse hostil con él, y que tanto la venta como la sustracción del abono se llevaron a cabo sin que al parecer se hiciera ningún

esfuerzo por ocultarlas; y no habiendo en absoluto prueba alguna de la pérdida del abono por dicha corporación, o respecto a la propiedad, posesión y verdadera custodia y dominio, de los efectos que de tal modo fueron sacados y vendidos o del ranchón de donde se sustrajeron, y particularmente en un caso en que dicha prueba está claramente en poder del Fiscal, o que fácilmente puede ser presentada por él, simplemente sería substituir la formación de una fuerte sospecha en la mente del jurado o juez por la presunción de inocencia y la regla respecto a la duda razonable, y sancionar, alentar y fomentar métodos descuidados y fortuitos en la presentación de pruebas y una manifiesta desatención de los más sagrados derechos de personas acusadas de delitos, así como de los principios más elementales de ley criminal y de procedimiento.

No queremos hacer esto.

La sentencia apelada debe ser revocada, absolviéndose al acusado.

*Revocada la sentencia apelada y absuelto el acusado.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.