ROSCOE CUPP V. THE STATE.

No. 16783.   Delivered May 30, 1934.
Rehearing Denied October 3, 1934.
Reported in 74 S. W. (2d) 701.

The opinion states the case.

*Oxford & McMillan* and *Chandler & Chandler*, all of Stephenville, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder, and his punishment assessed at confinement in the State penitentiary for a term of five years.

The testimony, briefly stated, shows that the appellant and his family, as well as the deceased and his family, had all resided in the city of Dallas; that some unpleasantness arose between the appellant and his wife which, according to his version of the affair, caused him to separate from her and he moved into Erath County, Texas, where he subsequently instituted divorce proceedings against his wife and prayed for the care, custody, and control of the children. His wife by cross action prayed for a divorce and for the care, custody, and control of the children. At the trial of the divorce suit in Erath County, Texas, the deceased appeared as a witness in behalf of the appellant's wife, and during the noon hour while court had taken a recess the appellant followed deceased out of the courtroom down on the street where he proceeded to shoot him with a pistol, as a result of which the deceased died. To make a more detailed statement of the affair leading up to the immediate time of the killing would serve no useful purpose except to place a sweet morsel upon the tongue of some gossiper.

By bill of Exception No. 1 the appellant complains of the admission of testimony to the effect that after the fatal encounter the deceased was searched and no weapon of any kind, not even a pocket knife, was found on his person. We think this testimony was admissible inasmuch as the appellant contended that he shot in self-defense, that deceased was making some demonstration which caused him to believe that deceased was about to attack him and carry into execution threats which he, the deceased, had made previously in his presence and hearing as well as those which had been communicated to him, and in support of the views herein expressed we refer to the case of Williams v. State, 17 S. W., 1071; Jowell v. State, 71 S. W., 286; Graham v. State, 123 S. W., 693; Decker v. State, 154 S. W., 566.

By bill of exception No. 2 the appellant complains of the action of the trial court in permitting the district attorney, while cross-examining Dean Cupp, a son of the appellant, to propound to him the following question: "You are glad he killed Jim Gamble?", to which the witness answered, "Yes sir." We

believe that this testimony was clearly admissible in that it showed the interest and bias of the witness as well as his state of mind at the time that he was testifying and the law expressly places the duty upon the jury trying the case of determining the credibility of the witnesses and the weight to be given to their testimony.

By bill of exception No. 3 the appellant complains of the action of the trial court in permitting the district attorney, while cross-examining Dean Cupp, the son of the appellant, to ask him, "If it wasn't a fact that Mrs. Gamble let his father have $28.00 with which to pay his utility bills?" To which the witness answered: "No, he always had money to pay them." Q. "He did, young man, until he took up with this wild woman over there." The court sustained the objectiton of the appellant to all of said testimony with the exception of the last question. We do not believe that the last question was harmful in view of other testimony that was subsequently elicited by the State from the brother of the appellant.

By bill of Exception No. 4 the appellant complains of the action of the trial court in permitting the district attorney to prove that the appellant was a conductor of a street car in the city of Dallas and while such conductor he met one Thelma Hill and that this woman rode the street car at times but had no regular time to ride either day or night. The appellant's' objection to said testimony was that it was immaterial, irrelevant, and inflammatory. The bill of exception discloses that the objection was sustained by the court and the testimony was withdrawn from the jury by the court as well as by the district attorney and the jury were instructed not to consider the same. We believe that under the circumstances the bill of exception fails to disclose any error, especially in view of the fact that other testimony was introduced which tended to show that the appellant had become infatuated with said woman.

By bills of exception Nos. 5 and 6 the appellant complains of the action of the trial court in permitting the State on cross-examination of the brother of the appellant to elicit the following facts, to-wit: That appellant told him that his domestic affairs had been rather unpleasant; that he had made up his mind to quit Ollie, his wife, but that he would support the children and not Ollie; that he was through with her; that the other woman was a very fine woman; that she visited him while he was in the hospital after he had undergone an operation; that she brought him some flowers and appeared to be very affectionate. We do not believe that the bill of exception,

under the circumstances discloses any error. It was the contention of the appellant that the deceased had invaded his home and destroyed his family's happiness and that he was the cause of the separation of the appellant from his wife. He was seeking to lay the entire blame of his separation from his wife upon the attitude of the deceased towards her. The testimony objected to was admissible for the reason that it tended to show that appellant was not worried as much over his separation from his wife as he attempted to show upon the trial in that he himself had become infatuated with another woman and that his separation from his wife may have been due to that fact instead of the relation which he claimed existed between his wife and deceased. It seems from the testimony that in a conversation by the appellant with his brother as well as by his action in instituting a suit for divorce that he had become reconciled to a separation but his real contention in the suit for a divorce was over the care custody, and control of the children. The deceased appeared at the trial as a witness in behalf of appellant's wife in her effort to obtain the care and custody of the children, which was perhaps the real and immediate cause of the homicide.

By bill of exception No. 7 the appellant complains of the action of the trial court in permitting the State to prove in rebuttal that appellant's wife gave appellant's life and accident insurance policies to Mrs. Gamble, and not to Jim Gamble, the deceased. The appellant had offered testimony that he was under the impression that Jim Gamble, the deceased, had his life and accident insurance policies. We do not see the materiality of this testimony. He, appellant, did not claim that this enraged him so as to render his mind incapable of cool reflection at the time of the homicide; this happened several months prior to the date of the alleged homicide. The appellant's contention was that the deceased had threatened his life, and that at the time he fired the fatal shot he believed from the acts and conduct of the deceased that he, the deceased, was about to carry his threats into execution.

We are not unmindful of the holding of this court in the case of Winn v. State, 113 S. W., 918, but we think that the case under consideration is distinguishable from that case. In the Winn case the appellant's barn was burned. He made an investigation and found a buggy track leading from where his barn was burned to the home of the deceased; he informed the officers that the deceased and Whaley had burned his barn, and the officers in turn informed deceased and Whaley of ap-

pellant's accusation. The deceased and Whaley became very much incensed, passed up and down the road inquiring and looking for appellant and making threats, and when they met, appellant shot and killed deceased. The appellant had a right to show his reason for accusing them of burning his barn because that was the very thing which induced him to accuse them of arson, which enraged the deceased and Whaley and produced the difficulty. If the State had been permitted to show that Whaley and the deceased did not burn the barn it would have appeared as if the appellant without any cause or provocation accused the deceased and killed him at a time when his mind was cool and calm, and would have deprived him of his right to show that his mind was agitated and had become enraged by the fact that he believed that deceased and Whaley had really burned his barn.

Bill of exception No. 8 relating to appellant's objection to paragraph eleven of the court's charge is too indefinite and does not specifically point out the error complained of and is therefore overruled. If the objection had specifically pointed out the error, it may have raised a serious question notwithstanding the decision in the case of Butler v. State, 51 S. W. (2d) 384.

By bills of exception Nos. 9 and 10 the appellant complains of the court's charge in that the court charged on threats made by the deceased towards appellant in the presence and hearing of the appellant, because the same is too restrictive as applied to the facts in the case. We can not agree to appellant's contention because the court charged on threats made by the deceased in the presence and hearing of appellant and also charged on communicated threats.

By bill of exception No. 11 the appellant complains of the following instruction of the court, to-wit: "If you find the defendant guilty, and assess his punishment at a term in the penitentiary, the form of your verdict will be: 'We, the jury, find the defendant guilty as charged in the indictment and assess his punishment at confinement in the penitentiary of this State for _____ years.' (Here state the punishment you assess against him, if any, and if not more than five years, add to your verdict whatever your recommendations are as to the suspended sentence)." The appellant objected to said charge because it did not instruct the jury in the event they found him guilty whether guilty of murder with or without malice. We believe the better practice would be, if the court is going to give to the jury a form of a verdict, he should give a form of every

kind of a verdict that may possibly be returned by the jury; otherwise, it may be construed by the jury to mean that the court is of the opinion that only a certain kind of verdict was justified under the law and the facts. However, in the instant case, the jury assessed the appellant's punishment at five years in the penitentiary, which is the maximum penalty for murder without malice, while the minimum penalty for murder with malice is two years in the penitentiary. Therefore, if the charge was error, it was harmless error, because if the jury found him guilty of murder and assessed his punishment at five years in the penitentiary, it could make little difference whether they said that the killing was with or without malice.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING

LATTIMORE, JUDGE.—Complaint is made of our disposition of appellant's bill of exceptions No. 7. We have had trouble in getting from this record the dates of the happenings deemed material. The killing was on January 31, 1933. A divorce suit brought by appellant against his wife was on trial. Appellant lived in Erath County, and had evidently lived there long enough to enable him to bring such suit as a resident of said county. His wife lived in Dallas County. The case had been set for trial once prior to the date of this killing. The Gambles,—deceased and his wife,—had gone from Dallas to Stephenville each time the case was set.

Appellant had formerly lived in Dallas, and while there had separated from his wife, after which he had moved to Erath County. The date of this trial of this appellant for murder was in September 1933. We find from the record that I. B. Cupp, appellant's brother and a witness in his behalf, testified to a time when appellant's wife left her children at the home of witness while she visited her brother in west Texas, and that this time was in January or February, and Mrs. Cupp was gone on said visit about five weeks. At the time this visit was made, all the parties lived in Dallas, and the date of said visit was evidently in 1932, as another brother of appellant, who also lived in Dallas and testified on this murder trial, swore that appellant moved from Dallas to Erath County

about a year and a half ago, which would make such removal some time in the spring of 1932.

Appellant did not testify. No witness swore as a fact,—or to any state of facts that suggested,—that appellant was agitated or excited at the time of the homicide, or supporting the conclusion that he acted under the influence of sudden passion. On the contrary, Mr. Martin, who arrested him at once after the killing, testified that appellant was cool,—under the circumstances very cool. He handed Martin his pistol and said: "Here I am Blackie, do what you want to with me; I guess I have killed Gamble." This witness testified that he had observed deceased leave the court room shortly before the killing, and that appellant followed deceased out. Other witnesses said that deceased was leaving the court house going west when appellant began firing at him,—one bullet taking effect in the hand of deceased, another entering his back and inflicting the mortal wound. Appellant's brother and other defense witnesses saw the fatal difficulty, none of whom swore to any agitation or excitement on the part of appellant.

Such being the case, we are at some loss to comprehend the effort on the part of appellant in this motion to attach weight as causing excitement or passion, to the proposition that a year before the killing appellant's wife should have delivered to deceased temporary custody, during her absence from Dallas, of some policy or policies of insurance presumably made out in favor of the wife, or for the benefit of herself and children. Appellant's daughter was his only witness to the fact that there was any such delivery of any policy to deceased, or any possession on the part of deceased of such policy,—and for the purpose of impeaching said witness and shedding adverse light on the likelihood that she ever told appellant any such story, the State had the right to prove by Mrs. Gamble that she was present on the occasion testified to by the daughter, and that no mention was made of the insurance policies, and further of the fact that said policies were later delivered to her (Mrs. Gamble) by Mrs. Cupp, and that she kept them, without inspection of same, for Mrs. Cupp until the latter came home from her west Texas visit, and that she then returned them to Mrs. Cupp. It is a fundamental rule that whatever may be proved by direct testimony may also be proved by circumstantial testimony. Manifestly it would be proper for the State to prove by direct testimony, if available, that appellant's daughter did not tell him that her mother had given to deceased said policies. Beyond question facts and circumstances

which would render improbable such telling, would be admissible. We are not able to agree with appellant in his contention that bill of exceptions No. 7 manifests any error. Barbee v. State, 58 Texas Crim. Rep., 129; Proctor v. State, 54 Texas Crim. Rep., 259; Cameron v. State, 153 S. W., 867; Long v. State, 59 Texas Crim. Rep., 103. We have again examined Winn v. State, 113 S. W., 918, and think it not in point.

We think bill of exceptions No. 4 was properly disposed of in our former opinion. The State did seek to show on this trial that appellant had deserted his wife and children, and had sought the attention and company of Thelma Hill, and that he murdered Gamble. If there was any impropriety in the statement of its intention so to prove, in the opening statement of the representative of the State, it was fully cared for by the court's action in instructing the jury not to consider same.

Appellant's bill of exceptions No. 8 complained of paragraph eleven of the court's charge wherein the court gave to the jury the law of murder without malice. The exception reserved to said paragraph was that it was too restrictive and imposed on appellant a greater burden than the law required. We merely said in our opinion that the exception was indefinite and not sufficiently specific. Article 1257c, Vernon's Ann. P. C., is in almost the same language as the charge given. We think the charge not subject to this exception. We think we disposed of all of appellant's complaints correctly.

Appellant again renews his complaint as to the form of verdict given by the court to the jury. We expressed our views regarding said form of verdict in our original opinion, but concluded under the facts of this case that if the form was erroneous, no injury resulted to appellant therefrom. We are forbidden by the terms of Art. 666, C. C. P., to reverse for errors in the charge which do not prejudice the rights of the accused.

The court gave a form of charge which ignored the question of murder without malice, although the court had instructed the jury fully as to their duty in case they found appellant guilty of murder without malice. Under the charge given the jury found appellant guilty as charged and fixed his punishment at five years in the penitentiary. The punishment for murder with malice is fixed at not less than two years nor more than death. The punishment for murder without malice is not less than two years nor more than five years. Since minimum is the same for both and the penalty given was with-

in the comprehension of both murder with and murder without malice, we think the error in the charge harmless.

The motion for rehearing will be overruled.

*Overruled.*