STATE, RESPONDENT, *v.* VAN, APPELLANT.

(No. 3,040.)

(Submitted December 12, 1911.   Decided December 28, 1911.)

[120 Pac. 479.]

*Criminal Law — Grand Larceny — Information—Ownership— Exhibits—Record—Offer of Proof—Instructions—Review— Reasonable Doubt—Motion in Arrest of Judgment—Election—Accomplices—Evidence—Corroboration.*

Evidence—Exclusion—Harmless Error.
   1.   Error in the exclusion of testimony is cured by the subsequent admission of substantially the same evidence.

Same—Exhibits—Record—Review.
   2.   Where the record on appeal does not contain or describe an exhibit claimed to have been erroneously excluded from evidence, the action of the court will not be reviewed.

Same—Exclusion—Offer of Proof.
   3.   In the absence of an offer of proof indicating the testimony sought to be elicited, alleged error in sustaining an objection to a question will not be reviewed.

Same—*Motion to Strike—When Too Late.*
   4.   After a question has been answered by the witness under examination, a motion to strike the answer from the record is of no avail.

Instructions—To be Considered Together.
   5.   In reviewing instructions they must be considered as a whole, since the trial court is under no obligation to state all the law applicable to a particular phase of a case in a single paragraph of the charge.

Criminal Law—Grand Larceny—Instructions—Reasonable Doubt—Harmless Error.
   6.   An instruction on the subject of reasonable doubt which, *inter alia,* told the jury that they were not allowed to create sources of doubt by resorting to remote conjecture, etc., *held* not to have been prejudicial to defendant.

Same—Instructions.
   7.   Where the substance of offered instructions was covered by other paragraphs of the charge, refusal of those requested did not constitute error.

Same—Motion in Arrest—Proper Denial.
   8.   A motion in arrest of judgment must be founded upon some defect in the information; hence where an information charging grand larceny under three counts, drawn under subdivision 4 of section 8645, Revised Codes, and subdivisions 1 and 2 of section 8642, was sufficient, such a motion was properly denied.

Same—Election—Discretion.
   9.   A motion to compel the state to elect upon which of three counts of a charge of grand larceny it would proceed was addressed to the sound legal discretion of the trial court, reviewable only upon a showing of manifest abuse of discretion.

Same—Grand Larceny—Evidence—Ownership—Sufficiency.
    10.  Evidence touching the ownership of sheep alleged to have been stolen, reviewed and *held* sufficient to go to the jury.

Same—Ownership of Property—Pleading and Proof.
    11.  The crime of grand larceny is against the state and not against the owner; and while ownership of the thing taken must be alleged in the information, it is only by way of description or identification of the property, the particular ownership being not of the essence of the offense.

Same—Instructions—Law of Case.
    12.  Instructions to the jury, whether right or wrong, are the law of the case.

Same—Accomplice—Corroboration—Evidence—Sufficiency.
    13.  Evidence of an accomplice *held* sufficiently corroborated, under the rule (Rev. Codes, sec. 9290) that conviction can only be had on the testimony of an accomplice if it of itself tends to connect the defendant with the commission of the crime charged.

*Appeal from District Court, Dawson County; Sydney Sanner, Judge.*

OLIVER VAN, charged with grand larceny, was convicted and appeals from the judgment and from an order denying him a new trial. Affirmed.

*Messrs. Loud & Campbell,* and *Mr. C. C. Hurley,* for Appellant, submitted a brief, and a supplemental brief. *Mr. C. H. Loud* and *Mr. Hurley* argued the cause orally.

It was error for the court to give the statutory definition of larceny without instructing the jury in addition thereto that the intent of the defendant at the time of the alleged taking must have been proved beyond a reasonable doubt to have been felonious. (*State* v. *Peterson,* 36 Mont. 109, 92 Pac. 302; *State* v. *McLeod,* 35 Mont. 372, 89 Pac. 831; *State* v. *Sloan,* 35 Mont. 367, 89 Pac. 829; *State* v. *Allen,* 34 Mont. 403, 87 Pac. 177; *State* v. *Rechnitz,* 20 Mont. 488, 52 Pac. 264.)

In order to constitute larceny the intent to steal must exist at the time of the taking of the property, and it is not enough that the defendant had such intent at the time of the converting of the property to his own use. (*People* v. *Miller,* 4 Utah, 410, 11 Pac. 514; *State* v. *Meldrum,* 41 Or. 380, 70 Pac. 527; see, also, *Territory* v. *Paul,* 2 Mont. 314; *State* v. *Rechnitz,* 20 Mont. 488, 52 Pac. 264.)

By defendant's requested instruction No. 16 the jury were told that it was incumbent upon the state to prove beyond a reasonable doubt the ownership of the animals in question as alleged in the information. This is a necessary element of the crime charged, and must be proved by as fair and exact evidence as any other fact or circumstance in the case. Under the peculiar condition of the testimony in this case pertaining to the question of ownership it was of great importance that the jury should be clearly and explicitly instructed upon the question of ownership in order to properly protect the rights of the defendant. (*State* v. *De Wolfe,* 29 Mont. 415, 74 Pac. 1084; *State* v. *Moxley,* 41 Mont. 402, 110 Pac. 83.)

The first count of the information does not charge any public offense under the laws of this state. We believe it to be the universal rule that in charging an offense under a statute the offense must be charged in the language of the statute, and in support of this proposition we call the court's attention to the monographic notes appended to the following decisions: *State* v. *Campbell* (29 Tex. 44), 94 Am. Dec. 251; *People* v. *Hanselman* (76 Cal. 460, 18 Pac. 425), 9 Am. St. Rep. 238.

Under our statute (Rev. Codes, sec. 8642) it will be observed that there are two elements distinctly pointed out and referred to: (1) The ownership of the property alleged to have been stolen; and (2) the taking of the property from the possession of the true owner or of some other person. We contend that in framing an information under this section of the statute, or in framing one which is intended to charge a larceny by asportation, it is absolutely necessary and essential to charge from whose possession the property alleged to have been stolen was taken. We have made a careful examination of the authorities and have failed to find any statute similar to ours obtaining in any state, save in Texas. The statute there has given rise to what is known as the "Texas doctrine," and throughout the authorities which treat of the subject we find the rule to be, that under similar statutes it is essential to allege and prove the ownership of the property and from whose possession the property was taken.

(See Bishop on Statutory Crimes, 2d ed., sec. 414; *Garner* v. *State*, 36 Tex. 693; *Case* v. *State*, 12 Tex. App. 238; *Bailey* v. *State*, 18 Tex. App. 426; *Alexander* v. *State*, 24 Tex. App. 126, 5 S. W. 840; *Price* v. *State*, 55 Tex. Cr. 157, 115 S. W. 587; 25 Cyc. 91.) It has been held that an allegation of possession is not an allegation of ownership (*Maddox* v. *State*, 14 Tex. App. 447), and by the same reasoning the converse of the proposition would be true, that an allegation of ownership would not be an allegation of possession. Under the Texas rule, that person must be named as possessor who actually had the legal possession of the goods. (*Briggs* v. *State*, 20 Tex. App. 106; *Long* v. *State*, 39 Tex. Cr. 537, 46 S. W. 821; *Jordan* v. *State*, 42 Tex. Cr. 528, 61 S. W. 128.) Under this rule the finder of an estray who takes and keeps him must be named as the possessor and not the owner. (*Tenney* v. *State*, 24 Tex. App. 112, 5 S. W. 831; *Williams* v. *State*, 47 Tex. Cr. 536, 84 S. W. 829.) It is also the rule that the pleader may within his discretion allege the ownership to be in the absolute legal owner, or in any person who may be taken as the owner so far as the thief is concerned; which ordinarily includes any possessor who has an interest in the property or exercises any control or management over it. (*Dignowitty* v. *State*, 17 Tex. 521, 67 Am. Dec. 670; *Blackburn* v. *State*, 44 Tex. 457; *Turner* v. *State*, 7 Tex. App. 596; *Duren* v. *State*, 15 Tex. App. 624; *Ledbetter* v. *State* (Tex. Cr.), 29 S. W. 1084; *Odell* v. *State*, 44 Tex. Cr. 307, 70 S. W. 964; *Blackwell* v. *State* (Tex. Cr.), 73 S. W. 960; *Price* v. *State*, 55 Tex. Cr. 157, 115 S. W. 586.) And this possession may be established by showing that the person named had the management and control of the goods. (*Doss* v. *State*, 28 Tex. App. 506, 13 S. W. 788.) We contend that in the light of the foregoing authorities in states having statutes similar to Texas and Montana, an information framed under the common law would be wholly adequate.

The second count is not sufficient to charge an ordinary larceny, for the reason that there is no allegation of a taking or asportation of the property alleged to have been stolen, and these

terms cannot be inferred from the term "did. steal," etc. (*Barnhart* v. *State,* 154 Ind. 177, 56 N. E. 212.) Neither is it sufficient to charge a larceny under such circumstances as would formerly have amounted to an embezzlement, for the reason that the representative capacity of the defendant is not alleged. Such being the case, the only remaining way by which larceny could have been committed must be either by obtaining the possession of the property by color or aid of fraudulent or false representations of pretenses, or by the larceny of lost property, as defined by section 8650, Revised Codes; but it is apparent that it was not intended to charge the larceny of lost property. The only way remaining by which it could possibly charge grand larceny would be under such circumstances as would constitute the offense formerly known as obtaining property by false pretenses; but to constitute that offense, it is necessary that the defendant obtain possession of such property by color or aid of fraudulent or false representations or pretenses, or by some false token or writing, none of which is alleged. (See *Territory* v. *Underwood,* 8 Mont. 131, 19 Pac. 398; *State* v. *Phillips,* 36 Mont. 112, 92 Pac. 299.) While the legislature has included what was formerly embezzlement and obtaining property by false pretenses within the crime of grand larceny, it has not changed the rules of pleading in this respect in the least.

The third count of the information does not state facts sufficient to constitute a public offense, and is insufficient to support a verdict of guilty for the following reasons, to-wit: (1) It fails to set forth the facts which constitute the bailment; (2) it does not allege either the character, purpose or breach of the bailment; and (3) the part of said count charging the defendant with having possession of said sheep as bailee is a mere conclusion and is not a sufficient allegation of bailment. (See *Wilbur* v. *Territory,* 3 Wyo. 268, 21 Pac. 698; *People* v. *Poggi,* 19 Cal. 600; *McCarty* v. *State,* 45 Tex. Cr. 510, 78 S. W. 506; *State* v. *Holton,* 88 Minn. 171, 92 N. W. 541; Wharton's Criminal Law, sec. 1061; McLean's Criminal Law, sec. 654; *State* v. *Mims,* 23

Minn. 191, 2 N. W. 492; *State* v. *Griffith,* 45 Kan. 142, 25 Pac. 616.)

*Mr. Albert J. Galen,* Attorney General, *Mr. J. A. Poore,* 'Assistant Attorney General, and *Mr. Frank P. Leiper,* submitted a brief in behalf of the State. *Mr. Poore* argued the cause orally.

The information in this case charges the same offense in three separate counts, and where the statute declares an act unlawful when perpetrated in any one or all of several modes, an indictment may charge the act in separate counts, basing each upon the different modes specified. (*State* v. *Mitton,* 37 Mont. 366, 127 Am. St. Rep. 732, 96 Pac. 926; *Territory* v. *Poulier,* 8 Mont. 146, 19 Pac. 594; *People* v. *Menken,* 36 Hun (N. Y.), 90; *Taylor* v. *People,* 12 Hun (N. Y.), 212.) "The indictment or information is sufficient, if it can be understood therefrom: * * * (6) That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended. (7) That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case." (Rev. Codes, sec. 9156; *State* v. *Brown,* 38 Mont. 312, 99 Pac. 954; *State* v. *Stickney,* 29 Mont. 523, 75 Pac. 201.) The second count of the information charges the offense substantially in the language of the statute, and this is sufficient. (*State* v. *Evans,* 27 Utah, 12, 73 Pac. 1047; *State* v. *Culbreath,* 71 Ark. 80, 71 S. W. 254; *State* v. *Kentner,* 178 Mo. 487, 77 S. W. 522; *State* v. *Keller,* 8 Idaho, 699, 70 Pac. 1051; *State* v. *Seely,* 65 Kan. 185, 69 Pac. 163.) "The exact words of the statute will, with rare exceptions, be practically best; because thus all doubt will be avoided, and simply the proof demanded by the law, and no more, will be called for in the indictment." (1 Bishop's New Criminal Procedure, secs. 611, 612.)

The third count of the information, objected to by counsel for appellant, has been held good by this court in the case of *State* v. *Brown,* 38 Mont. 309. The charging part of the in-

formation in the *Brown Case* and in the third count of the information in the case at bar are identical. There can be no question under this decision as to the sufficiency of this count.

The court did not err in refusing to require the state to elect upon which count of the information a conviction would be asked; for where the information, in each of its counts, charges but one and the same offense, with such variations of allegation as were prudently fitted to meet variations in the proof, the state is not required to elect on which count of the information it will rely. (*Armstrong* v. *People,* 70 N. Y. 38; *People* v. *Wright,* 136 N. Y. 625, 32 N. E. 629; *State* v. *Porter,* 26 Mo. 201; *State* v. *Phillips,* 104 N. C. 786, 10 S. E. 463; *Commonwealth* v. *Ismahl,* 134 Mass. 201; *Bailey* v. *State,* 4 Ohio St. 441.) And whether the trial court will compel the state to elect upon which count it will proceed rests in the discretion of the trial court, and cannot be assigned as error. (*Bailey* v. *State,* 4 Ohio St. 441; *Roberts* v. *People,* 11 Colo. 213, 17 Pac. 637; *Short* v. *State,* 63 Ind. 376.)

It is objected that there is not sufficient evidence in the record to sustain a conviction under either count of the information, but we respectfully submit there is no merit in this contention. Our section 8642, Revised Codes, defining larceny, has changed the law as it formerly existed in that it makes what was formerly embezzlement and obtaining money or goods under false pretenses larceny. (*People* v. *Pollock,* 51 Hun, 613, 4 N. Y. Supp. 297; *State* v. *Dickinson,* 21 Mont. 595, 55 Pac. 539; *State* v. *Brown,* 38 Mont. 309, 99 Pac. 954.) Larceny, as defined by the Code, embraces every act which was larceny at common law besides other offenses which were formerly indictable as false pretenses or embezzlement. (*People* v. *Miller,* 169 N. Y. 339, 88 Am. St. Rep. 546, 62 N. E. 418.) Whether Pablo Sausedo, at the time he drove the stray sheep into Van's herd, intended to steal them or not, seems to us to be immaterial. When they were driven to Van's corral, and Van appropriated them, with Sausedo's assistance, he at that time stole them, and a conviction will be sustained under either the first or second count of the information. If Van was a constructive bailee of the sheep

after they had been delivered to him by Sausedo, a conviction will be sustained under the third count of the information. But as we view the matter from the evidence as shown by the record, Van appropriated the sheep with the intent to steal them at the time he branded them, and the judgment should be sustained upon the first count contained in the information.

Counsel for appellant lay particular stress upon the question of proving ownership of the sheep stolen, and claim that the record does not show that Dye, Reid and Parrott were the owners of the sheep. We submit the record clearly establishes that the sheep were in their possession, and also that they were owned by these gentlemen jointly. "Property must have an owner before it is the subject of larceny, but this statute does not define the character of that ownership,—whether it is general or special, joint or several, absolute or qualified, arises from title or from possession. The particular ownership of the property stolen does not fall within the definition, and is not the essence of the crime." (*State* v. *Mjelde,* 29 Mont. 490, 75 Pac. 87.) The proof must support the judgment, and the judgment must be such that it will support a plea of former conviction,—this is the purpose of alleging and proving ownership. (*State* v. *Moxley,* 41 Mont. 408, 110 Pac. 83; *People* v. *Price,* 143 Cal. 353, 77 Pac. 73.) But in the absence of evidence to the contrary, in larceny or robbery, possession of the stolen property is sufficient evidence of ownership, and this would necessarily be true under the wording of our statute. (*People* v. *Oldham,* 111 Cal. 652, 44 Pac. 312; *People* v. *Davis,* 97 Cal. 194, 31 Pac. 1109; *People* v. *Nelson,* 56 Cal. 77; *People* v. *McCallam,* 103 N. Y. 587, 9 N. E. 502.)

A motion in arrest of judgment must be founded on some defect in the information mentioned in Rev. Codes, secs. 9200, 9353. (*State* v. *Tully,* 31 Mont. 365, 78 Pac. 760, 3 Ann. Cas. 824.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendant was convicted of grand larceny and appeals from the judgment and from an order denying him a new trial.

Appellant's counsel make sixty-seven assignments of error and in argument group them under thirty-two separate heads. To consider the questions, thus raised, separately and at any length would extend this opinion unnecessarily and would not accomplish any useful purpose. Many of the assignments must necessarily be disposed of somewhat summarily.

1. Objection was made to the introduction in evidence of certain pelts (Exhibits "B," "C," "D" and "E"). We think the identification of the exhibits was sufficient.

2. An objection made by the county attorney to questions asked a witness for the state on cross-examination as to the character in which Mr. Dye, one of the alleged owners of the property in controversy acted, was sustained, and error is [1] predicated upon the ruling. The record discloses, however, that the witness afterward gave substantially the same evidence as that sought by the questions; so that there was not any prejudice in the ruling, if erroneous.

3. Error is predicated upon the exclusion of Exhibits "H" and "J." Neither exhibit is in the record or described, and it [2] is therefore impossible for us to say whether error was committed. (*Bean* v. *Missoula ·Lumber Co.*, 40 Mont. 31, 104 Pac. 869; *Tague* v. *John Caplice Co.*, 28 Mont. 51, 72 Pac. 297.)

4. While the defendant was a witness in his own behalf he was asked to state what Henry Chapman, his employee, told him about the property in controversy. An objection by the county [3] attorney was sustained. There was not any offer of proof made, and we cannot determine whether error was committed in the ruling. (*Frederick* v. *Hale*, 42 Mont. 153, 112 Pac. 70; *Forquer* v. *North*, 42 Mont. 272, 112 Pac. 439.)

5. J. D. Wynn, a witness for the state, was asked to give a conversation had between himself and Henry Chapman. Without objection the witness answered, and counsel for defendant [4] then moved to strike out the answer. We have repeatedly held that this cannot be done. (*State* v. *Rhys*, 40 Mont. 131, 105 Pac. 494.)

6. The witness Wynn and one E. S. Herrick gave certain opinion testimony which was objected to upon the ground that

a proper foundation had not been laid. We think the witnesses showed themselves qualified as experts.

7. Objection was made to certain testimony given by the witness Leiper; but the evidence was clearly admissible as rebuttal. (*State* v. *Barrett,* 43 Mont. 502, 117 Pac. 895.)

8. In instructions Nos. 2 and 3, given, the court defined larceny in the language of the Codes. Objection is made that the element of felonious intent is omitted in each, and *State* v. *Rechnitz,* 20 Mont. 488, 52 Pac. 264, *State* v. *McLeod,* 35 Mont. 372, 89 Pac. 831, and other cases are cited in support of the contention that this was error. But counsel overlook the fact that in instruction No. 5, given, the court told the jury that it was necessary for the state to prove the felonious intent beyond a reasonable doubt. The instructions are to be considered as a [5] whole. The court is not held to state all the law applicable, in a single paragraph of the charge. (*State* v. *Byrd,* 41 Mont. 585, 111 Pac. 407.)

9. An instruction defining reasonable doubt, similar to No. 26 [6] given in this instance, was criticised by this court in *State* v. *Crean,* 43 Mont. 47, 114 Pac. 603, but it was held not reversible error to give it.

10. Defendant's offered instructions 6, 8, 9, 10, 15, 16, 20, 21 and 22 were properly refused, as the substance of each was [7] covered by instructions given by the court. (*Townsend* v. *City of Butte,* 41 Mont. 410, 109 Pac. 969.)

11. Error is predicated upon the order of the trial court denying a motion in arrest of judgment, and in refusing to direct the state to elect upon which count of the information it would proceed. "A motion in arrest of judgment must be founded [8] upon some defect in the information." (*State* v. *Tully,* 31 Mont. 365, 78 Pac. 760.)

The first count of this information charges that the defendant "did willfully, wrongfully, unlawfully and feloniously steal, take, drive and lead away seventy-five (75) head of sheep, the personal property" of Dye, Reed and Parrott, of the value of $375, with the felonious intent to deprive and defraud the true

owners of their property. Counsel for defendant argue that while this first count may be sufficient to charge grand larceny at common law, it is entirely inadequate to charge the crime under section 8642, Revised Codes, and many authorities are cited in support of this contention. . It is earnestly urged that the cases cited are peculiarly applicable, since the statutes construed are similar to our section 8642 above. This may all be conceded, for the purposes of this appeal, but without avail to defendant; for his counsel overlook the fact that subdivision 4 of section 8645, Revised Codes, also contains a definition of grand larceny, and that the allegations in the first count of this information are ample to bring it within that last definition.

The second count charges that the defendant did feloniously steal, withhold and appropriate to his own use the seventy-five head of sheep, the property of Dye, Reed and Parrott, of the value of $375, with the felonious intent to deprive and defraud the true owners of their property. This clearly charges grand larceny under the first subdivision of section 8642 above, and section 8645, Revised Codes. Subdivision 1 of section 8642 specifies three methods by which larceny may be committed: (a) By taking the property from the possession of the owner or some other person; (b) by false pretenses; and (c) by secreting, withholding or appropriating the property of another. (*People* v. *Dumar,* 106 N. Y. 502, 13 N. E. 325.) The second count charges the offense by this third method.

The third count charges that defendant, having these sheep in his possession as bailee of the owners, feloniously appropriated them to his own use, with the intent to deprive the true owners of the same. This count was drawn under subdivision 2 of section 8642 above. It follows the language of the statute and is sufficient. (*State* v. *Brown,* 38 Mont. 309, 99 Pac. 954; *State* v. *Stickney,* 29 Mont. 523, 75 Pac. 201.)

Since each count of this information is sufficient, the motion in arrest of judgment was properly denied.

The motion to compel the election was addressed to the sound [9] legal discretion of the trial court, and its ruling will not .

be disturbed in the absence of a showing that there was a manifest abuse of discretion. (*Armstrong* v. *People,* 70 N. Y. 38; *Short* v. *State,* 63 Ind. 376; *Bailey* v. *State,* 4 Ohio St. 441; *Roberts* v. *People,* 11 Colo. 213, 17 Pac. 637.)

12. The motion for a directed verdict and the motion for a new trial present the question: Is the evidence sufficient to sustain the verdict? Counsel for appellant argue with much force [10] that the state failed to prove the ownership of the property as alleged in the information. It is charged that the sheep in question were the property of Dye, Reed and Parrott. Neither of these persons was called as a witness, but the state relied for proof of ownership entirely upon circumstantial evidence.

Preston Willson testified that in the fall of 1909 he purchased something over 8,000 head of sheep for Dye, Reed and Parrott, and managed the sheep for them for a short time; that in August, 1910, he was again employed to assist in a division of the same sheep between Dye, Reed and Parrott when they dissolved partnership.

Howard Harvey testified that he was employed by Dye, Reed and Parrott and had charge of their sheep from January 10 to August 16, 1910; that their sheep were sheared at the Paragon pens in June, 1910, and after being sheared were branded—the wethers with a 7-cross brand in green paint, and the ewes with a two-quarter circle brand in black paint; that the sheep were counted when they left the shearing pens and counted again about June 23, when he discovered that something like 1,100 were missing; that he found 900 along the Yellowstone river, and afterward found about 100 of the remainder in the defendant's possession at his lower or King Gibb ranch; that he examined several of these sheep in defendant's possession and could detect Dye, Reed and Parrott's brand on them under a black blotch brand which had been placed over the original brand; that on some of the sheep which he caught and examined, he found blotches of green paint; that as foreman for Dye, Reed and Parrott, he went over his accounts with each of them; that he was

present on August 16 when the sheep were divided between Dye, Reed and Parrott, and the sheep then divided were the same that he had had in his custody, and the sheep he found in defendant's possession were a part of the same sheep and a part of the sheep sheared and branded at the Paragon pens in June.

We think this evidence sufficient to go to the jury. (*Rex v. King,* 12 Cox C. C. 134.) The gist of the offense is the wrongful [11] taking or conversion of the property, and the crime is against the state and not against the owners. The question of ownership is directed to the description or identification of the property. The language of Commissioner Poorman, in *State v. Mjelde,* 29 Mont. 490, 75 Pac. 87, is pertinent here: "Property must have an owner before it is the subject of larceny, but this statute does not define the character of that ownership—whether it is general or special, joint or several, absolute or qualified, arises from title or from possession. The particular ownership of the property stolen does not fall within the definition, and is not of the essence of the crime. Neither the legal nor moral quality of the act is affected by the fact that the property stolen, instead of being owned by one or by two or more jointly, is the several property of different owners. The gist of the offense is the felonious taking or appropriation. The grade of the offense is determined by the value of the property taken. The time and place of the taking and the ownership of the thing taken must be alleged in the information, not to give character to the act of taking or appropriation, but merely by way of description. The fraud is against the owner; but the crime, of which the fraud is one ingredient, is against the state, and not against the owner, owners or ownership. The prosecution is conducted in the name and by the authority of the state. The owner of the property stolen is not a party thereto."

Pablo Sausedo, a camp-tender in the employ of the defendant at the time of the alleged larceny, testified that defendant's sheep were sheared at the Paragon pens in June, 1910, and branded— the wethers with a bar brand in black paint, and the ewes with a blotch brand in red paint; that all of defendant's sheep were branded in the same way; that after the sheep were sheared and

branded, he and defendant's herder Henry Chapman, started to drive the sheep to defendant's lower or King Gibb ranch; that when about two miles from the shearing pens some of defendant's sheep escaped from them; that he went to hunt for them and when found they were mixed with other sheep; that he did not undertake to separate them but drove all the sheep to defendant's band, which was then in charge of Chapman; that he and Chapman took the sheep, including those he had picked up, to defendant's lower ranch; that he told the defendant about the strange sheep being in his band; that he and defendant counted and separated the sheep, turning the defendant's own sheep onto the range and retaining the strange sheep in a pen; that he asked defendant what he was going to do with these strange sheep, and defendant replied that he was going to keep them, and at defendant's directions he (Sausedo) held the sheep and defendant branded them, defendant first shearing off the green paint brand from the sheep having that brand, and using, for the purpose of branding, a tomato can and black paint, making a large, black blotch brand which was put on where the original brand had been; that as to the strange sheep branded with the quarter circle, the new brand was simply placed over the original brand; that defendant directed him to gather up the painted wool sheared off and burn it, which he did, and further directed him to destroy the can and paint left, but instead he put them away and afterward they were turned over to the officers.

The court instructed the jury that Sausedo was an accomplice, [12] and, whether right or wrong, this instruction became the law of the case, and it was necessary that the witness Sausedo be corroborated by other evidence which of itself tended to connect the defendant with the commission of the crime charged. (Rev. Codes, sec. 9290; *State* v. *Stevenson,* 26 Mont. 332, 67 Pac. 1001.) To recite all the corroborating testimony would not [13] serve any useful purpose. We content ourselves with saying that we think it amply sufficient to meet the requirement of the statute. Frank Marques, a witness for the state, testified

that after the commission of the alleged larceny, the defendant gave him $20 and asked him to induce Sausedo to leave the country so that he could not be used as a witness against the defendant, and in that conversation defendant said that it was the first time that he had ever taken sheep and branded them; that if Sausedo was away he would be released; that if Marques needed more money, to tell the defendant; that afterward when he (Marques) reported to defendant that he would not comply with defendant's request, defendant then asked Marques to leave the country so that he could not be used as a witness; that defendant's wife knew of this second conversation. It is pertinent to remark that although defendant and his wife were both witnesses for the defendant, neither denied anything told by the witness Marques. Aside from the testimony given by this witness, there is a very sharp contradiction in the evidence throughout. But if the testimony given by the witnesses for the state be believed—as it must have been by the jury—then the guilt of the defendant was established beyond any doubt.

We do not find any reversible error in the record. The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

Rehearing denied January 25, 1912.