## STATE, Respondent, *v.* BOOTH, Appellant.

(No. 3,178.)

(Submitted October 30, 1912. Decided November 14, 1912.)

[127 Pac. 1017.]

*Criminal Law—Grand Larceny—Livestock—Idem Sonans—Information—Ownership—Evidence—Sufficiency—Judicial Notice—Venue—Curing Error.*

Grand Larceny—*Idem Sonans*—Information—Sufficiency.
1. The fact that the correct name of the owner of stolen property was "Kirns" instead of "Kirn," as charged in the information, *held* insufficient to warrant a reversal of the judgment of conviction.

Same—Ownership—Evidence—Sufficiency.
2. Evidence examined and *held* sufficient to justify the jury in the conclusion that ownership of certain horses alleged to have been stolen was properly laid in the complaining witness.

Same—Felonious "Taking"—Evidence—Sufficiency.
3. Defendant traded two horses to K., who, however, left them on the range instead of taking them to his home. Subsequently the former sold them to Q. and assisted the latter in "getting them in" from the range, whereupon Q. took possession of them. Evidence *held* sufficient to show a "taking" on the part of defendant.

Same—Judicial Notice—Location of Towns—Boundary Lines.
4. The court takes judicial notice of the location of towns within the state with reference to their distance from its boundary lines.

Same—Venue—Evidence—Sufficiency.
  5. Evidence *held* sufficient to show that the larceny of two range horses was committed in the county (bounded on one side by Canada and on another by North Dakota) in which defendant was placed on trial.

Same—Evidence—Exclusion—Curing Error.
  6. Alleged error in refusing to allow defendant to answer a question was cured by the reception of evidence of another witness covering the same subject.

*Appeal from District Court, Valley County; Frank N. Utter, Judge.*

IRA M. BOOTH was convicted of the crime of grand larceny, and appeals from the judgment and an order denying his motion for a new trial. Affirmed.

*Mr. R. E. O'Keefe,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. Albert J. Galen,* Attorney General, and *Mr. J. A. Poore,* Assistant Attorney General, submitted a brief in behalf of the State.

MR. JUSTICE SMITH delivered the opinion of the court.

The defendant was convicted, in Valley county, of the larceny of two bay geldings, the property of one Henry Kirns. He appeals from the judgment and from an order denying his motion for a new trial.

The evidence justifies the following conclusions of fact: That in October, 1909, Henry Kirns and the defendant engaged in a so-called horse trade, wherein Kirns traded to the defendant two bay geldings each branded "Cross U" on the right thigh. The horses were not present at the time of the trade, but were "running on the creek" in the vicinity. Kirns had known them since they were colts. After the trade, Booth said to Kirns: "When are you coming down and get your two cross U geldings?" Kirns replied: "Why, I will get them in the spring roundup." At the spring roundup he was unable to find the animals, but about September 1, 1910, he found them in the possession of one Ned Quinn. The horses had been sold to Quinn by the defend-

ant, without the consent or knowledge of Kirns. Quinn told the defendant that Kirns claimed the horses and asked him whether they belonged to Kirns or him, and the defendant replied: "Them two horses I traded to Kirns, but he has been getting smart and bragging, and I am going to beat him out of them. You stick to those horses. I want you to stick to them. You are a ward of the government and so is Rosa [Booth's wife]. You say you bought the horses from Rosa." During the trial defendant asked Quinn: "What are you going to testify to?" Quinn replied: "I ain't going to say anything only the truth," to which defendant rejoined: "That don't sound very good. That is liable to send me over the road." At the time of the purchase of the geldings by Quinn from the defendant, the animals were at or near Booth's ranch. The latter said to Quinn: "There is one of them, and the other one is out there. We will get them in." Quinn testified: "So we went to get them in, and tied them up and I took them home." Albert Kirns saw one of the geldings on the range in February, 1910, at which time the defendant said to him, pointing out the horse: "There is one of the cross U geldings I traded to your father." The defendant told the witness Eddie Bear: "I have traded my two geldings I got from old man Sears to Henry Kirns. I will show you the horses I got in trade." Bear testified: "He showed me them two bay geldings he traded to Mr. Kirns." Defendant told the witness Shield: "When you get in there [at a hearing before the Indian agent] tell him that Albert Kirns told you that they were doing all this just to get Booth in trouble. I will give you five or ten dollars if you will swear that way." Defendant also told Shield in October, 1910, referring to the two cross U geldings: "I own them. I won them from Kirns. I traded them to Kirns, but if he ain't got sense enough to let me alone, he ain't going to get them. There is one man that knows about those horses and his name is Logan Walker. If he gives me away, it is all off with me."

1. The first contention of the appellant's counsel is that the [1] state failed to prove property in the person named as owner in the information, to-wit, Henry Kirn, because it developed at

the trial that his name was Henry Kirns. There is not any merit in this point. The names are practically identical.

2. Again, it is contended that neither property nor possession were shown to have been in Kirns at the time of the [2]   alleged asportation by Booth. There was testimony on the part of two relatives of the defendant, his wife and his father in law, that the geldings belonged to Mrs. Booth, but under the circumstances the jurors were under no obligation to believe it. (See *State* v. *Willette, ante,* p. 326.) The evidence heretofore quoted shows that Booth claimed to own the geldings, treated them as his property, referred to them as his, and traded them to Kirns, retaining the proceeds of the trade. Under these circumstances, we think the jury was justified in concluding that ownership was properly laid in Kirns. (*State* v. *Van,* 44 Mont. 374, 120 Pac. 479.) It is a significant fact that the alleged bill of sale from Sears, the father of Mrs. Booth, to her, for the geldings, was executed two months after the trade between Kirns and Booth.

3. There was a question of fact in the case as to whether Booth traded the two geldings referred to and described by Kirns, or two others, which he claimed to own, but that question was settled against the defendant by the verdict.

4. We think there was sufficient evidence that the defendant took the animals from the possession of Kirns. In October, 1909, the latter had stated to the defendant that he would leave them [3]   where they were until the spring roundup. In May, 1910, defendant said to Quinn, referring to the animals: "There is one of them, and the other one is out there. We will get them in." Thereupon the defendant and Quinn got them in and tied them up and Quinn took them home. We regard this as sufficient proof of a "taking" on the part of the defendant.

5. There is evidence in the record that Booth's ranch, where the crime was committed, is three or four miles north of Poplar, Montana, and we take judicial notice that Poplar is far [4]   more than that distance from the Canadian or North Dakota boundary lines. There is no merit in the contention that Quinn and Booth may have gone outside of Valley county to get

[5] the animals. Booth himself testified that they ranged on and near his ranch, and at the time of the taking he was able, from where he stood, on the ranch, to point out one of the animals; and it is a reasonable conclusion, from the evidence, that the other was near by.

6. Finally, it is contended that the court erred in refusing to allow the defendant to answer this question: "Do you know [6] whether or not the geldings mentioned in the bill of sale are the geldings involved in this prosecution?" If this ruling was error, the error was cured by the reception, without objection, of this testimony of Louis Sears: "I know the horses that Mr. Booth was arrested over. I sold them to my daughter Rosy Booth. I gave Rosy Booth a bill of sale of these horses. That is my signature: 'Louis Sears.'" (Whereupon the bill of sale was received in evidence.)

We find no reversible error in the record. The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.