## STATE v. REESE.

No. 2577.   Decided March 20, 1914 (140 Pac. 126).

1. LARCENY—EVIDENCE—SUFFICIENCY—OWNERSHIP OF PROPERTY. In a prosecution of a railroad employee for larceny, evidence that the railroad was in possession of the stolen goods as common carrier, and was in the act of transporting them, was sufficient to show title as alleged. (Page 260.)

2. CRIMINAL LAW—EVIDENCE—CORPORATE EXISTENCE. In a prosecution for larceny, evidence *held* sufficient to show the cor-

porate existence of a railroad company by general reputation.[1] (Page 261.)

3. CRIMINAL LAW—EVIDENCE—COMPELLING ACCUSED TO CRIMINATE HIMSELF—ARTICLES TAKEN FROM ACCUSED. After a railroad employee was arrested, and while being taken to the station, he wrote on a sheet of paper an offer to give money to the officer in charge if he would release him, and the officer by force took this paper from him. *Held*, that under the circumstances disclosed by the evidence, this paper was properly admitted as evidence against the accused on the trial. (Page 261.)

4. LARCENY—SUFFICIENCY OF EVIDENCE—TAKING AND ASPORTATION OF PROPERTY—CONSENT OF OWNER. In a prosecution of a railroad employee for larceny of property from the railroad company, evidence *held* sufficient to show want of consent of the railroad. (Page 262.)

APPEAL from District Court, Third District; *Hon. F. C. Loofbourow,* Judge.

J. C. Reese was convicted of larceny. He appeals.

AFFIRMED.

*W. W. Ray* and *R. B. Porter* for appellant.

*A. R. Barnes,* Attorney-General, and *E. V. Higgins* and *G. A. Iverson,* Assistant Attorneys-General, for the State.

FRICK, J.

J. C. Reese, the defendant, was convicted of the crime of grand larceny, and appeals.

The evidence relating to the larceny, briefly stated, strongly tends to establish the following facts:

At the time of the alleged larceny the appellant was in the employ of the Denver & Rio Grande Railway Company, as a conductor on one of its freight trains. His run was be-

---

[1] State v. Brown, 36 Utah, 46, 102 Pac. 641, 24 L. R. A. (N. S.) 545.

44 Utah—17

tween Helper and Salt Lake City, Utah. He was conductor of the train and in charge of the car between Helper and Midvale, from which it is alleged the stolen property was taken. At Midvale the train and car aforesaid passed into the charge of another conductor, but the appellant remained in his own caboose. The merchandise alleged to have been stolen consisted of 100 children's dresses which came into the possession of the Denver & Rio Grande Railway Company as follows: The original bill of lading was introduced in evidence, and from it it appears that the Waseca Manufacturing Company of Philadelphia, Pa., on the 1st day of December, 1912, packed and shipped to Hazlet & Tough at Petaluma, Cal., via "Union C. B. & Q., D. & R. G. and Western Pacific" railroads, as common carriers, "one crate of girls' dresses." It further appeared that those dresses were packed and shipped in a large wooden box 2x2x4 feet in size over the "P. R. R.," which initials were shown to represent the Pennsylvania Railroad, which operated a line between Philadelphia and Chicago; that at the latter place the box aforesaid was transferred from the P. R. R. to a car of the "L. S. & M. S. R. R.," which car was No. 46759. It was shown that the initials L. S. & M. S. R. R. stood for Lake Shore & Michigan Southern Railroad, and that the car aforesaid was taken from Chicago by the "C. B. & Q. Ry.," which was shown to be the Chicago, Burlington & Quincy Railway, and was by that company transferred at Denver, Colorado, to the "D. & R. G. R. R.," which was shown to be the Denver & Rio Grande Railroad Company, and that that company took the car at Denver and transported it over its road westward to Salt Lake City. The car in question passed into the charge of appellant at Helper, Utah, and he there received the bill of lading before referred to. When appellant's train arrived at Midvale station in Salt Lake County, some distance south of Salt Lake City, he could not proceed any farther with his train on account of the sixteen-hour service law, and his train was there turned over to Conductor Bruner, who attached appellant's train to his and brought them both into Salt Lake City as

one train. Appellant's train was placed in front of Bruner's train and caboose and was located about the middle of the whole train. When the train had reached a point at or near Tenth South Street, Salt Lake City, Mr. Bruner, in looking out of his caboose, saw a large bundle thrown from about the middle of the train. This bundle, it was shown, contained the 100 girls' dresses shipped from Philadelphia to Hazlet & Tough as aforesaid, and which had, by some person, been removed from the crate, or box in which they had been packed and shipped as aforesaid. Some one had gained access to car No. 46759 by shifting the car door, which could be done by reason of the absence of a bolt or nut without breaking the car seal, which was found intact. When the train had arrived at Murray station, which is between Midvale and Salt Lake City, Conductor Bruner had occasion to go into appellant's caboose for a chain, and in doing so he saw a bundle which appeared similar to the one thrown off the train, but which he thought was appellant's bedding and blankets. Appellant got off the train at Seventh South Street, Salt Lake City, and walked north to Third South Street, where he hailed an expressman whom he employed to take him to Tenth South Street to get a bundle, or some bundles, for him. The expressman asked appellant some questions, which, it seems, he was not willing to answer, and the colloquy between them almost resulted in losing the expressman the job, which, it seems, he was unwilling to lose. The appellant got into the express wagon and they drove down to Tenth South Street, where appellant requested the expressman to stop. Appellant got out of the wagon and went some distance farther south on the railroad right of way, and after arriving at the point where the bundles were lying, and after looking in all directions, he beckoned the expressman to drive down to where the bundles were; and after the expressman had arrived there the appellant proceeded to load the bundles into the express wagon, and while in the act of doing so was arrested by a special agent of the railroad company who was concealed in the vicinity watching the actions of appellant. The special agent compelled the appellant to

get into the express wagon, and the appellant, the special agent, and a brakeman, together with the bundles, were taken to the station of the railroad company by the express-man in his wagon. On the way appellant offered the special agent various sums of money if the latter would "keep quiet" about the matter. In making this offer appellant wrote on a blank leaf of his train book, which he held up so that the special agent could and should see what he had written and in holding up the book the special agent, by the exercise of some force, tore the leaf on which the offer was written from the book and also took the book from appellant, and the leaf and the book from which the leaf was torn were produced in evidence against appellant at the trial. It was shown that the wholesale price of the dresses was a little in excess of $100 and that the retail price thereof was not quite $200. It was also shown that the official who alone had the power to give consent to remove the dresses from the car had not given such consent. The box in which the dresses had been packed, and the dresses themselves, were also clearly identified by the young man who packed and shipped them at Philadelphia, and who had prepared the bill of lading, which he also identified. There were also shown other facts of a circumstantial nature which tended more or less strongly to connect the appellant with the larceny. We do not deem it necessary to set them forth here. Nor do we deem it essential to set forth the evidence offered by appellant in his own behalf, since the jury were not required to believe it, and, in view of the verdict returned, could not have believed his statements.

The first error assigned is that the state failed to prove that the title to the stolen property was in the Denver & Rio Grande Railroad Company. The proof is ample to show that the railroad company was in possession of the goods as bailee in its capacity of a common carrier, and that it was, at the time of the larceny, in the act of transporting the same. The fact that the railroad company had possession of the stolen goods and was in the act of transporting them also answers the contention that the proof is not sufficient to show that the same were shipped from Phila-

delphia or that they were transferred at Chicago, as claimed by the state.

It is next contended that the state failed to prove the corporate capacity of the Denver & Rio Grande Railroad Company. The state undertook to prove the corporate capacity of the railroad company pursuant to Comp. Laws 1907, section 4859, which, among other things, provides that in criminal cases corporate capacity "may be proved by general reputation." That is, the corporate existence of the railroad company in this instance could be shown by proof that the general reputation of the railroad company was that it was a corporation and transacted business as such. The same question was before this court in *State v. Brown,* 33 Utah, 109, 93 Pac. 52, where it was held that the proof was insufficient. The same case, however, was again before this court. (36 Utah, 46, 102 Pac. 641, 24 L. R. A. (N. S.) 545.) In the latter case the proof was held sufficient. While in that case the evidence is not set forth in the opinion, yet we have examined the printed abstract filed in that case in which the evidence is set forth, and the evidence in this case is substantially the same as it was in that case. In view that we held the evidence sufficient in that case, that case must control the present one upon that question. The contention therefore cannot be sustained.

It is next contended that the leaf torn from appellant's train book, and the book itself, were improperly admitted in evidence against appellant because they were taken from him by the use of force by the special agent who arrested him. When the book and leaf were taken from appellant he was under arrest. Appellant testified in his own behalf, but he did not deny the fact of offering the special agent money to keep quiet; nor did he in any way deny or explain his own conduct in that regard. He did not claim that excessive, or any force was used. We see no reason why it was not proper to show all that occurred or what was said and done by the appellant at the time of his arrest and immediately thereafter. While we do not wish to be understood as unconditionally approving the use of force in

taking property from one who is accused of an offense, yet we cannot interfere with convictions which· are otherwise regular, proper, and legal for matters of this character.

It is next contended that the necessary want of consent by the railroad was not sufficiently shown. We think it was. Want of consent when property is taken from a corporation certainly, like any other essential fact, may be shown by circumstantial evidence. Moreover, where property is taken secretly and without the owner's knowledge, the proof of nonconsent may be inferred from other facts, since it cannot be assumed under such circumstances that the owner consented. (18 A. & E. Ency. Law (2d Ed.) 469.)

The contention that under the evidence the court should have directed the jury to return a verdict of not guilty is clearly untenable. To hold that under the facts and circumstances of this case the jury were not justified in returning a verdict of guilty would amount to offering a premium to the employees of common carriers to steal the goods of shippers while in transit. In our judgment the jury were not only authorized to return a verdict of guilty in this case in view of the whole evidence, but we cannot see how they could have done otherwise under their oaths.

The judgment is affirmed.

McCARTY, C. J., and STRAUP. J., concur.