PEOPLE, PLAINTIFF AND APPELLEE, *v.* CARRILLO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Humacao in a Prosecution for Petty Larceny.

No. 1093.—Decided December 12, 1916.

LARCENY—CORPUS DELICTI—EVIDENCE.—In larceny, as in other cases, the *corpus delicti* may be proved by circumstantial evidence; but it must be established.

ID.—EVIDENCE.—The mere fact that the accused had sold some sacks of fertilizer which were housed in a shed on a farm belonging to a company which used fertilizer, without any evidence that the company had lost any fertilizer or any evidence regarding the ownership, possession, custody or control of the fertilizer so sold, or of the shed from which it was taken, is not sufficient to support a conviction for larceny.

The facts are stated in the opinion.

*Messrs. Arturo Aponte, Jr.,* and *Ramón P. Rodríguez Alberty* for the appellant.

*Mr. Salvador Mestre, fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Defendant-appellant, hereinafter referred to as defendant, was convicted of petty larceny, first in the Municipal Court of Fajardo, and later in the District Court of Humacao, on a complaint charging the facts as follows:

"That on August 1, 1915, in the ward of Daguao of Naguabo, of the Municipal Judicial District of Fajardo, Judicial District of Humacao, P. R., the said defendant wilfully, maliciously and criminally stole from a shed on the farm 'Oriente,' belonging to the Fajardo Sugar Growers' Association, ten sacks of chemical fertilizer and animal blood, valued at seventy dollars, of which he sold five sacks to Lauro Meléndez for twenty-five dollars; four sacks to Ignacio Gil (*a*) Nussi, for twenty dollars; and one sack to Ramón Meléndez for five dollars."

At the trial in the district court the prosecuting witness, an overseer of the Fajardo Sugar Growers' Association on the *colonia* "Oriente," testified that he knows defendant, who worked on that plantation as *listero* during August; that the central uses fertilizers for agricultural purposes, witness having charge thereof; that defendant had nothing to do with the custody of same but merely kept a record of the peons, where they worked, and of what was used daily on each piece of cane, after witness had apportioned the fertilizer, in order to make a weekly report from such record to the office; that defendant was not responsible in any way for the fertilizer contained in the storehouses, which was under the custody of witness; that the duty of defendant on receiving the fertilizer to be used in the fields was to keep track of the quantity used by the foremen on each piece daily; that neither witness nor any officer of the company authorized defendant to sell a number of sacks of fertilizer; that defendant had nothing to do with the fertilizer, as the same was in the custody of witness, who received it and delivered it in the different pieces of cane; that no fertilizer had been missed and on checking up there was a surplus

of 25½ sacks; that witness is better informed than any other person as to the number of sacks received and stored; that according to the report made by witness to the company there is no shortage but a surplus of 25½ sacks; that prior to August 1, witness cannot say how many sacks there were because the report was in the office; "that witness noted the surplus on July 15, the account not being well made, nor was the report made by Carrillo well made."

The company's superintendent of cultivation testified that the company uses fertilizers; that the defendant had been employed on the Oriente as *listero* and voluntarily abandoned his employment during the first or second week in August, when charged with having sold fertilizer to different parties; that witness never had any conversation with defendant; that they only checked up the fertilizer one year; that defendant left without giving any excuse; that he was not discharged but went voluntarily.

There is other testimony tending to show, and which for the purpose of this opinion it may be admitted does show beyond a reasonable doubt, that defendant sent peons with a cart to a shed on the Oriente, removed a number of sacks of fertilizer therefrom, delivered the same to various persons, and received money therefor. We may note in passing, however, that the testimony on cross-examination of the two peons who removed the fertilizer from the shed and the only witnesses to the fact of such asportation, suggests a strong motive for some animus on the part of each witness toward the accused; but that, of course, is a circumstance which if it stood alone would be entitled to little or no consideration on appeal.

The door of the shed was not locked and aside from possible inferences to be drawn from the facts above outlined, there is not a word of testimony to show that the shed was used by the company as a storehouse for fertilizer, that the fertilizer contained therein and sold by defendant belonged

to the company or was in its possession or in the custody of its overseer or that it was not the property of defendant.

As pointed out by the Supreme Court of Mississippi in *Hughes* v. *State,* 20 So. 838, "it is a matter of common knowledge that on almost every plantation others besides the owner of the plantation itself—the premises—both own and are in possession of their own personal property."

Of course, the *corpus delicti,* in larceny as in other cases, may be proved by circumstantial evidence; but it must be established. Cases illustrating the rule are collected in notes to *Mason* v. *State,* 16 Am. & Eng. Annotated Cases, 1212; *Bines* v. *State,* 68 L. R. A. 33; and *Sanders* v. *The State,* 28 L. R. A. (new series) 536.

Although some reported decisions, in order to sustain the conviction of criminals whose guilt was reasonably clear in cases where the production of direct or stronger circumstantial evidence seemed difficult or impossible, have extended this rule somewhat beyond the danger line, we have found no well-considered opinion which goes quite so far as we are asked to go herein. The general trend in this direction may be traced in the following: *George* v. *United States,* 97 Pac. 1052, 100 *id.* 46; *Shires* v. *State,* 99 Pac. 1100; *Hines* v. *United States,* 103 Pac. 879; *State* v. *Keeland,* 104 Pac. 513; *State* v. *Van,* 120 Pac. 479; *Peterson* v. *State,* 65 S. E. 311; *Ray* v. *State,* 60 S. E. 816; *State* v. *Reese,* 140 Pac. 126; *Cohoe* v. *State,* 118 N. W. 1088.

With the exception of two instances, which perhaps swing farther toward the opposite extreme than is required by the dictates of reason and justice, a more wholesome regard for the fundamental rights of the defendant is found in the following: *Perry* v. *State,* 46 So. 470; *State* v. *Loomis,* 105 N. W. 397; *Spiller* v. *State,* 135 S. W. 549; *State* v. *James,* 113 S. W. 232; *State* v. *Boswell,* 133 S. W. 99.

Here, as elsewhere, the true course must lie in a sound common-sense mean between the two extremes, and the facts

in each case as it arises must be measured by the one elementary rule already stated that, whatever the character of the evidence, it must establish every essential element of the offense.

In the case at bar there is neither proof of ownership of the fertilizer sold by defendant nor evidence of any shortage in the fertilizer belonging to the corporation. The overseer in charge of the fertilizer used by the company insists that there was a surplus of some 25 bags according to his own inventory and report; that he noticed this surplus on July 15, but cannot state the number of sacks on hand prior to August 1, "because the report is in the office." No effort was made to produce the report. If it be true, as intimated by the witness, that neither his own accounting nor the report made by defendant was correct, and if it be also true, as likewise stated by the same witness, that defendant received the fertilizer to be used in the fields; then, in so far as these circumstances point to a falsification by defendant of the weekly reports made by him as to the number of sacks received and used by him, embezzlement rather than larceny is suggested. But the same witness also says that defendant had nothing whatever to do with the custody and handling of the fertilizer used by the company, which was delivered by witness on the ground for use on each piece of cane, and that the responsibility of defendant was limited to counting and recording the number of sacks actually placed on each piece by the foremen in charge of the work.

The fact as to the ownership or actual possession of the fertilizer contained in the shed (mentioned but once during the trial by a single witness for the prosecution, one of the two peons who testified to the loading of a cart pursuant to the order of defendant,) must have been easily ascertainable. Indeed, it would seem that the truth in this regard was on the tongue of the prosecuting witness over-ripe for

utterance and awaiting only an intimation from the *fiscal* that such information was desirable. But to hold that a trial court may brand the defendant in a criminal case with the stigma of a conviction for theft merely because he has sold a few bags of fertilizer housed in a shed on a plantation controlled by a corporation that uses fertilizer in the cultivation of cane,—the removal of the fertilizer so sold having been effected not by stealth but by an order given to a cartman employed on the same plantation with defendant and who apparently had reasons known to defendant for a hostile feeling toward him, both such sale and removal having been made without apparent effort at concealment, and in the total absence of any evidence as to the loss of any fertilizer by the said corporation, or as to the owner- ship, possession or actual custody and control, either of the goods so removed and sold or of the shed from which they are removed, and especially in a case where such evidence is plainly in the hands of the prosecuting attorney, or easily susceptible of production by him,—would be simply to substitute the creation of a strong suspicion in the mind of the jury or judge for the presumption of innocence and the rule as to reasonable doubt, and to sanction, encourage and foster careless and haphazard methods in the presentation of evidence and a reckless disregard of the most sacred rights of persons accused of crime and of the most elementary principles of criminal law and procedure.

This we are unwilling to do.

The judgment appealed from must be reversed and the defendant discharged.

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.